JACKSON *v.* STATE.

Opinion delivered January 8, 1912.

1. STATUTES—ENACTING CLAUSE.—Where a statute contains the enacting clause required by art. 5, sec. 18, of the Constitution and also the enacting

clause provided by the initiative and referendum amendment to the Constitution, the act is not invalidated by the two enacting clauses, since the one that is inappropriate may be treated as surplusage. (Page 481.)

2. EVIDENCE—JUDCIAL NOTICE.—The courts will take judicial notice of the contents of the legislative journals and also of public elections. (Page 482.)

3. STATUTES—TAKING EFFECT FROM PASSAGE—The act of May 26, 1911, fixing the time of holding courts in the Eleventh Judicial Circuit, in providing that it should "take effect and be in force ninety days from and after its passage," meant that it should take effect in ninety days from and after its approval by the Governor. (Page 422.)

4. COURTS—TERMS.—The Legislature may provide for as many terms of court in a county as it deems necessary, the only limitation being that at least one term in each year must be provided for. (Page 482.)

5. LARCENY—UNEXPLAINED POSSESSION.—Where the explanation by the accused of his possession of recently stolen property is found to be unsatisfactory, an inference of his guilt is warranted. (Page 485.)

6. SAME—EVIDENCE—QUESTIONS FOR JURY.—In a prosecution for larceny of hogs the good faith of an alleged attempt by the accused to notify the owner, and whether he converted the hogs to his own use by marking them, were questions for the ury. (Page 486.)

7. APPEAL AND ERROR—EXCLUSION OF EVIDENCE—HARMLESS ERROR.—The question whether the court erred in refusing to permit a witness to answer certain questions will not be considered on appeal where it does not appear that any prejudice resulted from the refusal to allow the witness to answer the question. (Page 486.)

Appeal from Desha Circuit Court; *Antonio B. Grace* Judge; affirmed.

*X. O. Pindall*, for appellant.

1. The evidence does not show either a clandestine taking, or any attempt at concealment, or that the possession by the appellant was other than a mere trespass. To constitute larceny, there must be simultaneously an unlawful taking, asportation and felonious intent. The court erred in refusing to direct a verdict for the defendant. 110 Ky. 123, 60 S. W. 938; 62 Kan. 469, 84 Am. St. Rep. 411; 2 Bishop's New Crim. Law (8 ed.), § 842; 41 Fla. 291; 79 Am. St. Rep. 186; 3 *Id*. 691; 133 Ala. 145.

2. The verdict is contrary to the law as declared by the court to the effect that "if the taking was without felonious intent to steal then existing in his mind at the time of such taking, and he afterwards marked the pigs in pursuance of an intention to steal them formed at some time subsequent to the taking,

this would constitute a separate offense." There is no proof whatever showing or tending to show that the marking occurred at the time of the taking, and no inference can reasonably be drawn from the testimony to that effect. 40 Fla. 480, 74 Am. St. Rep. 154.

3. The court erred in excluding testimony offered for the purpose of showing the witness Hudson's feelings and motives. He had pretended to state a knowledge of appellant's motives, and as a test of his own it was competent to prove that he had quarreled with appellant's white adviser, Cole Bush, and was actuated by hard feelings towards him.

4. Appellant's conviction at the so-called August term of the circuit court was void for want of jurisdiction. 52 Kan. 29; 39 Am. St. Rep. 327. Until the passage of the act of May 26, 1911, the time for holding the regular terms of the Desha Circuit Court was the second Mondays in January and July of each year. Kirby's Digest, § 1302. The second section of the act preventing it from taking effect for 90 days from its passage is as much a part of the act as any other. Before the expiration of the 90 days, the time for the regular July term came, and that term was neither held nor adjourned, and it lapsed by operation of law. 39 Am. St. Rep. 328. The effect was to carry over all court business until the next regular term, the January, 1912, term. Kirby's Digest, § 1328; 49 Ark. 227; Brown on Jurisdiction, 67 § 15a.

An act speaks only from the time it takes effect, and not from the time it was signed. 1 Lewis, Stat. Con. 312, § 175; 1 Ia. 435; 46 Mich. 46. The intent of the Legislature is the law. 21 Me. 58; 64 Me. 135; 34 Ga. 270; 1 Ia. 443. As to the intent of the Legislature, it is obvious that the act was passed with full knowledge of section 1328, Kirby's Digest, and of the custom throughout the State of holding only two regular terms of the circuit court each year in counties having but one district; also that it did not lapse the July term, 1911, but expressly preserved it and held it intact in withholding the act from taking effect until 90 days after its passage. The intent must prevail over literal interpretation. 21 Mont. 205; 47 N. Y. 140; 29 Ala. 451; 67 N. W. 140. See also 15 Ia. 257; 22 Ia. 340.

5.  When the bill was introduced in the Legislature, there was no probability and no assurance that it could or would be made a law in time for it to become operative by the 28th day, being the fourth Monday, of August, 1911, since it contained the ninety-day clause. .The Legislature can not, therefore, be presumed to have intended this act to take effect in Desha County in the year 1911. Art. 6, sec. 15, Const.; 73 N. Y Supp. 953.

6.  The "ninety days after the final adjournment," etc., provided for filing referendum petitions, must mean ninety days from the time when final action on the bill could possibly be had; for until final action there could be no necessity for reference, since only that could be referred which, without a reference, would have effect. 26 Utah 1.

Considering the Amendment No. 10 in connection with art. 6, sec. 15, Const., the ninety-day clause of the amendment means either ninety days from the time the Governor has exercised his final discretion, or that the people are to have but seventy days in which to petition for a reference of measures other than those containing the emergency clause, since it can not reasonably be expected that they would ask for a reference of a measure until the final determination had been had with reference to that measure as to whether or not it should be left in the form having the effect, and therefore be the subject of reference.

The term "take effect and be in force from and after its passage," employed in the act, can only mean after the act goes into effect. Art. 5, sec. 2, Const. 1868; 31 Ark. 701; 53 Ore. 162; 70 S. W. 945; 100 S. W. 1042; 6 Ia. 89; 38 Ind. 633; 74 Ia. 171; 64 Me. 133; 10 Mich. 135; 13 Mich. 318.

In a supplemental brief appellant's counsel argues that the act does not disclose by what authority it was enacted. Its plurality of enacting clauses destroys the effect of either, and renders it void for want of disclosure of the authority for its enactment, the authorities therein assigned being in conflict and at variance. 27 Ark. 276, 284, 285; 36 Cyc. 967, 968; 91 Ind. 546; 120 Ill. 322; 11 N. E. 180; 10 Nev. 250; 21 Am. St. Rep. 738; Cushing's Law & Proceed. Leg. Assemblies, 819, § 2101; 73 Minn. 203; 72 Am. St. Rep. 616.

*Hal L. Norwood,* Attorney General, and *William H. Rector,* Assistant, for appellee.

1. There is sufficient evidence in the record to sustain the verdict. The jury having reached their verdict under testimony, the weight of which was solely for them to judge, and under instructions to which no objections were interposed, this court will not disturb the verdict. The mere fact that the testimony might be weak or that a preponderance of it might be in favor of the appellant does not entitle him to a reversal. 94 Ark. 169; *Id.* 548; 63 Ind. 285; 105 Mass. 163.

2. There was no abuse of discretion in excluding the testimony as to the state of feeling between the witness Hudson and Cole Bush. Its admission would have tended only to confuse and mislead the jury.

3. The act of 1911 was approved on the 26th day of May, and, according to its terms, was to become effective ninety days thereafter, that is to say, on August 24.

When, under the old law, the July term lapsed, the court stood adjourned until the next term fixed, or to be fixed. According to its terms, the new statute became effective four days before the fourth Monday in August. When a term of court lapses, it stands adjourned until "court in course," *i. e.,* until in the course of events the next designated time for holding a term of court; and the time in this case, the Legislature having the right and power to change the time for holding the terms of circuit courts as it sees fit, and its act to that effect in this case having become effective, was the fourth Monday, 28th day, of August.

We concede that, unless the act was an emergency measure, and unless the Legislature found that an emergency existed calling for its immediate operation, it could not, under the provisions of Amendment No. 10, become effective until ninety days after the final adjournment. 88 Pac. 522; 71 Pac. 721.

While the Legislature is prohibited from making a general law, other than an emergency measure, effective prior to ninety days after adjournment, there is nothing in the Constitution or this amendment which prohibits it from providing that the law shall become effective at some stated time subsequent to the expiration of ninety days after adjournment. In this

case the act provided that it should become effective "ninety days from and after its passage." Since an act is not passed until approved by the Governor, or, if vetoed by him, by the constitutional majority over his veto, the "ninety days after its passage" in this case means that length of time after May 26, 1911, when the Governor approved the act.

Counsel for appellee, after discussing the authorities relied on by appellant, state the distinguishing feature of this case to be that "in the instant case the *ninety days after its passage* refers to the time that the act as a whole should become operative and effective. Citing, as tending to support appellant's contention, 61 S. W. 218; 14 S. E. 407; 33 Pa. 202; 82 Mass. 144; 1 Pac. 343; 64 N. W. 348. Also 15 L. R. A. 243; 3 Heisk. (Tenn.) 443.

4. The plurality of enacting clauses does not vitiate the act. It shows on its face that it is a legislative enactment, and not initiated by the people, and judicial notice will be taken of the fact that it has not been referred to the people under Amendment No. 10. One or the other of the enacting clauses was necessary. It is not necessary to determine which was the proper form. Either of them being right, the other should be treated as surplusage. See 106 Pac. 540; 19 Pac. 821.

*Stuckey & Stuckey* and *Morris M. Cohn*, as *amici curiae*.

(a) It is not necessary for every act of the General Assembly to contain the terms relating to enactment by the people, in all cases, whether the act is or is not initiated by or referred to the people. 85 Ark. 171; 106 Pac. 540; *Id.* 544; 109 Pac. 821; *Id.* 820.

(b) It is well settled that an act of the General Assembly takes effect from the day it is approved by the Governor, unless it contains words to the contrary. 7 Wheat. 164; 1 Ala. 312; 2 Ala. 26; 2 Ill. 555; 1 Morris 9; 14 Mo. 184; 74 Am. Dec. 522; 3 S. C. 564; Fed. Cases, No. 397; *Id.* No. 11,777; 8 Ala. 119; 31 Ala. 383; 8 Ga. 380; 76 Ga. 741; 50 Tenn. 442.

The provision in the amendment that the veto power of the Governor shall not extend to measures referred to the people obviously applies only to an initiated bill, not to a bill enacted into law by the General Assembly.

The other provision, that a petition may be filed within ninety days after the close of the session of the Legislature,

could not postpone the efficacy of an act which was never referred at all. The filing of such a petition is a prerequisite to any suspension of the enactment. See Enabling Act, 1911, § 1.

Where the Constitution is silent as to when an act of the Legislature is to take effect, or on its face an act provides that it is to take effect immediately, the mere fact that later on a referendum may or may not be filed does not delay the taking effect of the act. Nor will the absence of the emergency words in an act be important; for, in the absence of a showing to the contrary, it will be presumed that a proper emergency arose for giving the act immediate effect. 76 Ark. 197, 201, 205; *Id.* 207; 66 Ark. 575; 48 Ark. 370. See also 110 Pac. 738, and cases cited.

(c) The tenth amendment is not self-executing. The necessity for an enabling act, and the impossibility under any of our laws to carry the amendment into execution without the enabling act shows that it is not self-executing. If it were intended to make it self-executing, the amendment should have been framed up so that it could be self-executing. 95 Pac. 435; 115 Pac. 383; 98 Pac. 149; 85 Ark. 89; 65 Ark. 312; 60 Ark. 325, 332; 34 Ark. 500, 501; 109 Pac. 478; 10 Cal. App. 564; 67 S. E. 940; 95 S. W. 824; 117 Tenn. 82; 121 Am. St. Rep. 967; 209 U. S. 211; 107 Pac. 391; 80 N. W. 143; 2 S. D. 207.

(d) This court held in *Vinsant* v. *Knox*, 27 Ark. 276, that the constitutional requirement with reference to an enacting clause was mandatory, and appellant so contends, citing many cases; but there are as many authorities holding that it is directory only. See 106 Pac. 540 and cases cited; 40 Miss. 268; 29 Md. 377; 110 Md. 608; 113 Md. 179. And recently this court laid down a principle by which to determine whether a provision should be held to be mandatory or directory, which shows that the provision in question is directory. 136 S. W. (Ark.) 670.

*McCaleb & Reeder* and *John W. & Joseph M. Stayton,* as *amici curiae.*

1. The amendment is self-executing. 91 Pac. 577; 90 Pac. 153; 52 S. E. 821; 145 Ala. 202; 105 La. 499; Cooley's

Const. Lim. (7 ed.), 121; 62 N. W. 129; 64 Ill. 44; 95 Pac. (Okla.) 435; Lewis' Sutherland, Stat. Con. § 404; 68 Ark 438; 179 U. S. 251; 105 Pac. 1106; 104 Pac. 426.

2. As to the time when, since the amendment, an act of the Legislature goes into effect, we submit that the provision that "referendum petitions shall be filed * * * not more than ninety days after the final adjournment," etc., means just what it says, and applies to all bills passed by the Legislature, except such as themselves express that they are for the "immediate preservation of the public peace, health and safety," and that they are therefore to take effect ninety days after passage. 88 Pac. 522; 74 Pac. 720; 31 Ark. 712; 16 Ill. 361; 29 Pac. 379; 90 N. E. 754; 115 N. W. 619; 83 Ark. 448.

3. That the use of an enacting clause is imperative and essential to the validity of an act of the Legislature has been held by this court, and the weight of authority supports that view. 27 Ark. 284; 45 S. E. 823; 91 Ind. 546; 11 N. E. 184; 4 S. E. 350; 98 N. C. 660; 10 Nev. 250; 75 N. W. 1116; 73 Minn. 203; 77 N. W. 450; 104 S. W. 526; 1 Lewis' Sutherland, Stat. Con. (2 ed.) § § 71, 72, 73, 94, note 43, pp. 122, 123; 12 Pac. 712; 94 N. E. 763; 139 Fed. 353; 140 Fed. 988.

McCulloch, C. J. Appellant was convicted of the crime of grand larceny under an indictment returned by the grand jury of Desha County at the January, 1910, term of the circuit court of that county. The trial, which resulted in his conviction, took place at a regular term of that court commencing on the fourth Monday in August, 1911; and it is contended that the proceedings were void for the alleged reason that the holding of a regular term of the court at that time was without lawful authority. The General Assembly of 1911 enacted a statute, which was approved by the Governor on May 26, 1911, changing the time of holding terms of circuit courts in the Eleventh Judicial Circuit and fixing the time of holding the courts in Desha County on the third Monday in January and the fourth Monday in August of each year. Prior to the passage of that act, the time for holding said court was fixed by statute on the second Mondays in January and July of each year. The act of May 26, 1911, bears a double

enacting clause, or, speaking with more exactness, two enacting clauses, namely:

"Be it enacted by the General Assembly of the State of Arkansas:

"Be it enacted by the People of the State of Arkansas:"

It is insisted that the use of two enacting clauses renders the statute invalid, for the reason that it leaves a doubt as to the source of the authority for the enactment, whether from the people by the exercise of the constitutional power of initiating legislation, or whether from the General Assembly proceeding on its own initiative. The Constitution of 1874 contains a provision (section 18, article v) that the style of all laws passed by the General Assembly shall be: "Be it enacted by the General Assembly of the State of Arkansas." The General Assembly of 1909 proposed, and at the general election held in September,1910, the people adopted, an amend ment to the Constitution providing for the initiative and referendum in legislation. Said amendment contains a provision that "the style of all bills shall be: "Be it enacted by the people of the State of Arkansas." Since both forms of enacting clause were employed, it is unnecessary for us to decide which of them should have been used in framing the statute passed by the Legislature on its own initiative. One or the other of them was necessarily inappropriate, but we are not called on now to decide which one should have been used. The precise question which we must decide is, whether the improper use of one form of enacting clause rendered the statute void, the appropriate form having been also used. This court held in *Vinsant* v. *Knox*, 27 Ark. 266, that the constitutional requirement as to the style of legislative enactments was intended to be mandatory, and must be substantially complied with. It does not follow, however, from the decision of that question that the use of two enacting clauses, one of which is inappropriate, renders the enactment void. On the contrary, it seems clear to us that if the form prescribed by the Constitution is in fact used the addition of another inappropriate clause should be treated as surplusage, and does not render the act void. It is not sound argument to say that, because of the use of two forms of enacting clause, the authoritative source of the enactment is unexpressed and left in doubt. We know judicially

that the bill originated in one of the houses of the General Assembly, and not with the people. We are so informed by the journals of the two houses, of which we take judicial notice. We know also that there had not, and could not have, been an election for the adoption of a law initiated by the people. Those are matters of which all persons take notice. Hence, when the face of the statute in question is examined, in connection with the history and progress of the bill for its enactment, the source of authority is not in doubt, and since that authority is expressed in the appropriate constitutional form, the statute is not invalidated by the addition of another inappropriate form.

The statute in question concludes with the provision that "This act shall take effect and be in force ninety days from and after its passage." The word "passage," as there used, means, we think, approval by the Governor, for it is then that the enactment of the statute becomes complete. Computing from the date of approval which was on May 26, the statute became effective August 24, 1911, which was four days before the fourth Monday in August, when the term of court was commenced according to the provisions of the statute. The Constitution, as amended, provides that "Referendum petitions shall be filed with the Secretary of State not more than ninety days after the final adjournment of the session of the legislative assembly which passed the bill on which the referendum was demanded." The regular session of the General Assembly of 1911 ended on the 13th day of May, and no reference of the act has been demanded by the people. The time for reference ended on August 11, 1911, and the question whether the constitutional amendment is self-executing, so as to put itself in force from the time of its adoption, and the further question whether or not the act could have gone into effect before the time for demand on the part of the people for a reference, need not be discussed. In any view of it, the statute was in force before the date of the commencement of the August term of the court.

But it is contended with much earnestness by learned counsel for appellant that the statute in question did not contemplate an August term of the court for that year, and that it was not intended as a provision for such term, it being in

contemplation of the lawmakers that a term of the court would be held in July under the preexisting statute before the amendatory statute could go into effect, and that it would not be necessary to hold another term in August of the same year; hence, no provision for it.  He bases his contention upon the idea that, owing to the necessary delays in the progress of a bill through the two houses of the General Assembly, the uncertainty as to the time of adjournment and approval by the Governor, and the postponement of the period for the going into effect of the statute, the lawmakers did not intend to disturb the July term of court, but had in mind at the time that the term would be held under the old statute before the new one went into effect.  We have no means of probing the legislative mind further than the intention manifested by the language of the statute itself, which plainly declares that the law should become effective ninety days after its approval by the Governor, whenever that might be.  We may indulge in conjecture as to what the members of the Legislature thought might result in its effect upon the time of holding the then approaching term of court, but in ascertaining the true legislative intent we must confine ourselves to the language of the act itself.  There is nothing in the Constitution which limits the power of the Legislature in enacting a statute and putting it into effect at a time which would permit the holding of a term of court in July, under an old statute, and also provide, under the new, for the holding of another term in August.  It is clear that such was the result of this statute in happening to go into effect at the time it did.  The only limitation found in the Constitution upon the power of the Legislature with respect to fixing the number of terms of court in each county is that at least one term in each year must be provided for.  *Parker* v. *Sanders*, 46 Ark. 229.  The Legislature may provide for as many more terms of court as it deems necessary.  In the opinion of the court in the case just cited, Judge BATTLE quoted with approval, as bearing upon that subject, the following from Cooley on Constitutional Limitations (pp. 157, 200, 203, 208):

"Where the power which is exercised is legislative in its character, the courts can enforce only those limitations which the Constitution imposes; not those implied restrictions which, resting in theory only, the people have been satisfied to leave

to the judgment, patriotism and sense of justice of their representatives. * * * When the fundamental law has not limited, either in terms or by necessary implication, the general powers conferred upon the Legislature, we can not declare a limitation under the notion of having discovered something in the *spirit* of the Constitution which is not even mentioned in the instrument."

We are also urged to construe the section of the statute postponing its operation ninety days after passage to mean ninety days after the end of the period allowed for reference to the people. We are unable to reach the conclusion that that is the correct construction, for it would do violence to the plain language of the statute, which declares that it "shall take effect and be in force ninety days after its passage." The act was "passed," within the meaning of the language used, when it was approved, and the ninety days' postponement ran from that date. The Legislature had the power to lengthen, but not to shorten, the time for putting the statute into operation, and it was the manifest intention of the lawmakers to postpone the operation of the statute that length of time, regardless of any further postponement of its operation which might result from the length of time given for reference to the people after the adjournment of the session. As we have already shown, the time for reference ended on August 11, 1911, which was before the time fixed by the act itself for going into effect. But the fact that, by reason of a later adjournment, the reference period might have been extended beyond that time affords no ground for argument that the lawmakers meant to postpone the operation of the statute ninety days after the end of the reference period.

Counsel also mention another question without pressing it to any extent; that is, that the reference period should be held to have commenced running from the date of approva of the act by the Governor so as to give the full period of ninety days after that time for filing petitions for reference. It is sufficient answer to say that the constitutional amendment provides that the petition for reference must be filed "not more than ninety days after the final adjournment of the session of the legislative assembly which passed the bill." This language is too plain to need construction, and it can not be mis-

understood. But, even if the argument be sound, it would not aid appellant's cause, for, as we have already seen, the August term of court, fixed by the statute, was commenced more than ninety days after its approval by the Governor.

We have pretermitted decision of the question whether the provisions of the referendum amendment are self-executing, and also whether the operation of the statute is suspended during the period allowed for demanding a reference, it being unnecessary to decide these questions in this case. Nor is it necessary for us to decide what form of enacting clause must be prefixed to a statute initiated by the Legislature itself. Other cases will come before us in which those questions may arise, and it would be improper for us to attempt to decide them, difficult as they appear to be, until presented in a case where they become vital. We are of the opinion that the statute was in force at the time that the term of court at which appellant was convicted was held, and that the court was held under lawful authority.

Appellant contends that the evidence was not legally sufficient to warrant his conviction. He is accused of stealing ten hogs, the property of John A. Hudson, who testified that he missed from the range on his land two of his sows and twelve pigs, and that he subsequently found the sows and some of the pigs in appellant's possession. The sows were marked in his mark, and the pigs were unmarked before he missed them. They were on a range on the opposite side of the Arkansas River from where they were subsequently found in appellant's possession. The pigs were marked when found in appellant's possession, and he admitted that he marked them. The evidence tended to establish the fact that appellant knew that the pigs belonged to Hudson, and it also tended to show that the pigs did not cross the river of their own accord, but were carried across. Appellant testified that it was customary to take up hogs running along the line of the levee, that he was told by a white man named Bush to take the hogs, and that after he took them into his possession he posted a notice in a public place on the engine room door of the gin house to the effect that he had taken up twelve hogs and was keeping them at his home. He did not comply with the law with reference to posting estrays. His testimony was corroborated by other

witnesses. The testimony warranted the jury in finding that the hogs found in appellant's possession had been recently stolen, and his explanation of his possession presented a question for the jury to determine whether or not he was the guilty person. If the explanation of his possession of the recently stolen property was found to be unsatisfactory, an inference of his guilt was warranted. *Gunter* v. *State*, 79 Ark. 432. The good faith of his alleged attempt to notify the owner and his conversion of the property to his own use by marking the pigs, were also questions for the jury to consider in determining his guilt or innocence. *Blackshare* v. *State*, 94 Ark. 548.

Error is assigned in the court's refusal to allow appellant to interrogate Hudson, on cross examination, as to the state of feeling between him and Cole Bush, the man who appellant claims told him to take up the hogs, and also in the court's refusal to allow appellant to ask Hudson if he had not instituted the prosecution for the purpose of annoying and giving trouble to Bush. If it be conceded that the testimony sought to be elicited by the questions was competent, still there is not enough in the record to show that any prejudice resulted from the refusal to allow the witness to answer the question, for it is not shown what the answer of the witness would have been. There was no offer to prove any particular fact by the witness, and we have no means of knowing what testimony an answer to the questions would have elicited. Therefore the error of the court, if error it be, was not prejudicial. *Meisenheimer* v. *State*, 73 Ark. 407. The record also recites that appellant offered to prove by Bush what Hudson had said to him at the time he took the hogs away, and also offered his testimony regarding the quarrel between Hudson and himself. The record does not show, however, what it was that Hudson said to Bush, nor what they quarreled about, nor the extent of their quarrel. Therefore, there is not enough in the record to show that any prejudice resulted. It was the duty of the appellant, in appealing to this court for correction of errors, to put enough in the record to show that some prejudice to him had resulted from the ruling of the court. *St. Louis, I. M. & S. Ry. Co.* v. *Aiken*, 100 Ark. 437.

Finding no prejudicial error in the proceedings, the judgment is affirmed.

KIRBY, J., dissents on ground that the evidence was not sufficient to warrant conviction. He concurs in holding that the term of court was lawful.