AUSTIN PEAY *v.* JOHN F. NOLAN, TREASURER, *et al.**

(*Nashville.* December Term, 1927.)

Opinion filed June 30, 1928.

1. DEPARTMENTS OF GOVERNMENT. JUDICIAL DEPART-
MENT.

The judicial department respects and sustains the other depart-
ments. (Post, p. 228.)

Citing: Maxey v. Powers, 111 Tenn. (3 Cates), 381; Richardson v.
Young, 122 Tenn. (14 Cates), 471; Clements v. Roberts, 144
Tenn. (17 Thomp.), 145.

2. LEGISLATIVE DEPARTMENT. COURTS. CONSTITUTION-
AL LIMITATION.

The courts recognize that the legislative department, within its
legitimate sphere, possesses all power not withheld by the Con-
stitution. (Post, p. 228.)

Citing: Smiddy v. Memphis, 140 Tenn. (13 Thomp.), 475; Cavender
v. Hewitt, 145 Tenn. (18 Thomp.——, 475; The Judges Cases, 102
Tenn. (18 Pickle), 551; L. & N. R. R. v. County Court, 33 Tenn.
(1 Sneed), 673; Demoville v. Davidson County, 87 Tenn. (3
Pickle), 219.

3. LEGISLATURE. COURTS. CONSTITUTIONAL LIMITATION.

While the legislative department of the government is politically
independent, the Constitution is a restraining instrument and the
courts, empowered to declare the law, are required to subject
challenged acts of the Legislature to constitutional tests. Every
act violative of the intent and meaning of the Constitution is void,
and the judicial department is empowered and obligated so to
declare; and in exercising this power the courts ɪ erely declare
in favor of the Superior Law, the Constitution. (Post, p. 229.)

Citing: Girdner v. Stephens, 48 Tenn. (1 Heisk.), 283; State v. Lindsay, 103 Tenn. (19 Pickle), 633; Mabry v. Baxter, 58 Tenn. (11 Heisk.), 689; State v. McCann, 72 Tenn. (4 Lea), 1; Bouldin v. Lockhart, 69 Tenn. (1 Lea), 195; Bank v. Cooper, 10 Tenn. (2 Yerg.), 608; 12 C. J., 775; Cooley Const. Lim. (8 Ed.), 133.

4. MEMBERS OF LEGISLATURE. COMPENSATION. OFFICIAL EXPENSES. PERSONAL EXPENSES. LIMITATIONS.

The Constitution, in addition to restraining the power of the Legislature to grant gratuities, limits the compensation of the members of the Legislature which is clearly expressed, and the court cannot, by resorting to arbitrary rules of construction, extend the meaning conveyed by the language used in the Constitution; but the Constitution does not expressly or impliedly impose a limitation upon the power of the Legislature to provide for the expenses of the legislative department, nor upon the power to provide for the official expenses of members, but not for personal expenses intended to be covered by the compensation allowed by law. (Post, p. 229.)

Citing: Constitution of Tennessee, Article 2, sec. 23; Article 11, sec. 8; Throop Public Officers, 495; People v. Wemple, 115 N. Y., 302; Briscoe v. Clark, 95 Ill., 303.

5. CONSTITUTION. PER DIEM. SALARY.

The term "per diem" as used in the Constitution is synonymous with "salary." The term salary imports the idea of compensation for personal service, and not the repayment of money expended in the discharge of the duties of the office. (Post, p. 231.)

Citing: Throop Public Officers, 441; Constitution of Tennessee, Article 2, sec. 23.

6. PUBLIC OFFICERS. PER DIEM. SALARY COMPENSATION. GRATUITOUS SERVICES.

Compensation attached to public office, whether "salary" or "per diem" is not given to the incumbent because of any supposed legal duty resting upon the public to pay for the services, but to enable ǃpublic officials to give due attention to their official duties, and the law creating an office without any provision for compensation carries with it the implication that the services are to be rendered gratuitous. (Post, p. 231.)

Citing:   State ex rel. v. Nashville, 83 Tenn. (15 Lea), 705; 22 R. C. L., p. 526, note 4; Moore v. Strickling, 50 L. R. A., 280.

7. CONSTITUTION. MEMBERS OF LEGISLATURE. SALARY. PERSONAL EXPENSES.

The provisions of the Constitution allowing compensation to members of the Legislature was intended to cover their personal expenses, that is, expenses incident to their personal comfort, convenience and tastes as distinguished from official expenses, that is, expenses arising from the performance of official duty.   (Post, p. 231.)

Citing:   Heublin v. City, 15 Conn., 545; Dixon v. Shaw, 50 A. L. R., 1237; See Constitution of Tennessee, Article 2, sec. 23.

8. CONSTITUTION. MEMBERS OF LEGISLATURE. COMPENSATION. LIMITATION.

The Constitution expressly fixes the compensation of members of the General Assembly and by implication carries a restraint against any action to the contrary, hence forbids any enactment that would either directly or indirectly increase or diminish the compensation therein fixed.   (Post, p. 231.)

Citing:   Constitution of Tennessee, Article 2, sec. 23; Whitthorne v. Turner, 155 Tenn. (2 Smith), 303; Keith v. Funding Board, 127 Tenn. (19 Cates), 451; 29 Cyc., 1427-1429.

9. CONSTITUTION. GRATUITIES. TAXATION.

The Constitution operates to prevent the granting of favor or benefits to individuals, and the power of taxation which is limited to public use, by implication confines the power of expenditure to like uses.   (Post, p. 232.)

Citing:   Constitution of Tennessee, Article 11, sec. 8.

10. CONSTITUTIONAL RESTRAINTS. EXERCISE OF POWER.

In the exercise of any power, legislative or otherwise, constitutional restraints must be observed, and it is always a judicial question as to whether or not those restraints have been ignored overlooked by the legislature in passing a statute; but a separate investigation dependent on extrinsic facts is not permissible in a judicial inquiry.   (Post, p. 233.)

Citing: State v. Thomason, 142 Tenn. (15 Thomp.), 533; Lynn v. Polk, 76 Tenn. (8 Lea), 121; Lowenthal v. Underdown, 132 Tenn. (5 Thomp.), 560; Quinn v. Hester, 135 Tenn. (8 Thomp.), 373; 6 R. C. L., 111-112.

11. LEGISLATIVE ACTS. CONSTRUCTION. DETERMINATION OF FACT. PRESUMPTION. TAX LEGISLATION.

The general rule that the legislative determination of facts is conclusive, and the courts cannot reopen the question or make new findings, has often been applied in opinions involving the validity of legislative classification for purposes of taxation and for the enforcement of police regulations, but in cases of that character, the presumption is **prima facie**, not conclusive. The court is not required to assume the existence of any fact that cannot be reasonably conceived; it is not the form of a statute, or the words that are used but the object intended and the result reasonably effected by their use that must control the determination of its constitutionality. (Post, p. 235.)

Citing: Motlow v. State, 125 Tenn. (17 Cates), 559, 560; 12 C. J., sec. 220, p. 798; Standard Oil Co. v. State, 117 Tenn. (9 Cates), 639; Mugler v. Hanson, 123 U. S., 623.

12. CONSTITUTION. COMPENSATION OF OFFICERS. POWER OF LEGISLATURE.

The Constitution fixes the compensation of no officer or employee of the State except that of members of the Legislature and that body cannot alter the compensation so established. Otherwise the power of the Legislature to regulate the pay of State officers and agents is unrestrained, except that they cannot increase or diminish the salary of the Governor or of a judge during the term for which such functionary is elected. (Post, p. 235.)

Citing: Constitution, Article 3, sec. 7; Article 6, sec. 7.

13. CONSTITUTION. LEGISLATIVE ACT. APPROPRIATION.

An Act of the Legislature being "An Act to appropriate money out of the State Treasury for the purpose of defraying the expenses of the State Government for two years, commencing July 1, 1927, also legislative expense," which appropriated $750 "for postage, stenographic hire and other necessary expenses to each

157 Tenn.—15,

member of the General Assembly," does not provide a mode or agency through which to determine what, if any, official expenses were incurred by "each member" and the amount thereof, so as to distinguish the appropriation in gross from either a gift or additional compensation, both of which are forbidden by the Constitution, is unconstitutional and void. (Post, p. 236.)

14. CONSTITUTION. MEMBERS OF LEGISLATURE. SALARY. EXPENSES. APPROPRIATION.

To sustain an appropriation in gross as an allowance for expenses and not a forbidden increase of compensation, the sum must be within such reasonable limits as to authorize the conclusion that the sum in gross might be covered by a certified statement of the official expenses incurred by the designated beneficiary. An appropriation in gross so large as to suggest that it would not be covered by an itemized statement of official expenses, and so appropriated as to make it the absolute property of the official without regard to actual expenses, is an increase of compensation; and violates the Constitution. (Post, p. 237.)

Citing: Acts 1927, ch. 53, sec. 1.

Distinguishing: State v. Thomason, 142 Tenn. (15 Thomp.), 533.

---

*Headnotes 1. Constitutional Law, 12 C. J., section 167; 2. Constitutional Law, 12 C. J., Section 205; 3. Constitutional Law, 12 C. J., section 63; 4. States, 36 Cyc., p. 852; 5. ———; 6. ———; 7. Constitutional Law, 12 C. J., section 221; 8. Constitutional Law, 12 C. J., section 391; 9. Constitutional Law, 12 C. J., section 205; 10. Constitutional Law, 12 C. J., section 219; 11. ———; 12. ———.

---

FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County. —HON. JOHN R. AUST, Chancellor.

THOMAS H. MALONE, NORMAN FARRELL, CHAS. C. TRABUE, AVERY HANDLEY, WM. WADE, AUSTIN PEAY, JR., and A. B. BROADBENT, for appellants,

L. D. SMITH, Attorney-General, and K. T. McCONNICO, for appellees.

MR. JUSTICE COOK, delivered the opinion of the Court.

The Legislature of 1927 appropriated $750 as expenses to each member of the General Assembly and directed the Treasurer to pay it. The complainant, as a citizen and taxpayer, filed the bill against the Treasurer and Comptroller of the Treasury to enjoin the payment of the appropriation. The Chancellor sustained the defendants' motion to dissolve the injunction and dismiss the bill and complainant appealed.

Through complainant's assignments of error it is insisted:

First, that Article 2, Section 23 of the Constitution, which prescribes the compensation of members of the General Assembly, by implication forbids an additional appropriation for their expenses;

Second, if expenses may be allowed this appropriation bears no reasonable relation to the expenses incurred by members, and is obviously an indirect attempt to increase their compensation contrary to the Constitution.

This is met by the insistence of the defendants:

First, that the Constitution imposes no limitation, express or implied, upon the power of the General Assembly to provide for the expenses of members;

Second, the people having set up three co-ordinate departments of government and declared the independence of each, the judicial department is without power to determine the validity of an appropriation, by the legislative department, for the expenses of individual members of the General Assembly;

Third, and the legislative department having declared that the item appropriated is for the expenses of mem-

bers of the General Assembly, the declaration is a conclusive finding of fact which cannot be reviewed by the judicial department.

(1) The judicial department respects and sustains the power of the other departments of the State Government. *Maxey* v. *Powers,* 111 Tenn., 381; *Richardson* v. *Young,* 122 Tenn., 471; *Clements* v. *Roberts,* 144 Tenn., 145.

(2) The courts recognize that the legislative department, within its legitimate sphere possesses all power not withheld by the Constitution. *Smiddy* v. *Memphis,* 140 Tenn., 104; *Cavender* v. *Hewitt,* 145 Tenn., 475; *The Judges Cases,* 102 Tenn., 551.

A review of our decisions, involving efforts to have the Court arrest alleged abuses of legislative discretion, suggests that the short tenure of the office of Representative obscures its importance and minimizes the power of the members in session as the General Assembly. By inverse processes the power of the Judicial Department is exaggerated. In efforts to dispel the idea that the Court may arrest legislative discretion, it has been said that but for the constitutional limitation upon legislative power, "the Legislature of Tennessee would be as omnipotent as the Parliament of England, is assumed to be by Blackstone." Blk. Com. 160; *L. & N. R. Co.* v. *County Court,* 1 Sneed, 673.

In the exercise of legislative power, the General Assembly may accumulate vast revenues and expend them. Abuse of the power of taxation and expenditure would supply no basis for unauthorized Judicial interference. The Legislature, intrusted with power to gather and expend revenue, is the guardian of the public fund (*Demoville* v. *Davidson County,* 87 Tenn., 219), subject only to control by the will of the electorate, and alto-

gether free from Judicial interference, until it appears that they have exceeded the limits imposed by the Constitution.

(*3*) Admitting all that has been said, or may be said, concerning the power of the legislative department and its political independence, it remains that the Constitution is a restraining instrument, and the courts, empowered to declare the law, are required to subject challenged acts of the Legislature to constitutional tests. Every Act violative of the intent and meaning of the Constitution is void, and the judicial department, in a proper proceeding, is empowered and obligated to so declare. *Girdner* v. *Stephens,* 1 Heisk., 283; *State* v. *Lindsay,* 103 Tenn., 633; *Mabry* v. *Baxter,* 11 Heisk., 689; *State* v. *McCann,* 4 Lea, 1; *Bouldin* v. *Lockhart,* 1 Lea, 195; *Bank* v. *Cooper,* 2 Yerg., 608; 12 C. J., 775; Cooley Const. Lim. (8 Ed.), 133. In exercising this power the courts merely declare in favor of the superior law, the Constitution.

(*4*) It follows, therefore, that the court must determine whether or not the Constitution imposes any limitation upon the power of the Legislature to provide for the expenses of members of that body, and beyond that whether or not this appropriation is such as the Constitution forbids. The only limitation, other than the express or implied restraint upon power to give gratuities, is that found in Article 2, Section 23 of the Constitution. It provides:

"The sum of four dollars per day, and four dollars for every twenty-five miles traveling to and from the seat of government, shall be allowed to the members of each general assembly elected after the ratification of this Constitution, as a compensation for their services.

But no member shall be paid for more than seventy-five days of a regular session, or for more than twenty days of any extra or called session, or for any day when absent from his seat in the Legislature, unless physically unable to attend. The senators, when sitting as a court of impeachment, shall each receive four dollars per day of actual attendance.''

When construing constitutional provisions the state of things when the provision originated is to be considered. The allowance of *per diem* and its equivalent measured by distance originated with the Convention of 1796 when twenty-five miles indicated a day's journey; and so in 1870, as originally, distance was used to equalize days of service by adding to the seventy-five days of a regular session, and twenty days of a special session, additional days of service indicated by each twenty-five miles of travel to and from the residence of members.

The intent to confine the limitation to compensation is clearly expressed, and the court cannot, by resorting to arbitrary rules of construction, extend the meaning conveyed by the language used in Article 2, Section 23. To do so would result in the judicial amendment of the fundamental law. The provision fixing the compensation of members of the General Assembly for their services does not expressly or by implication impose a limitation upon the power of the Legislature to provide for the expenses of the legislative department, nor upon the power to provide for the official expenses of members. Therefore, members of the Legislature may be reimbursed for extraordinary expenses necessarily incurred by them in the course of, and in consequence of the discharge of their official duties, but not for person-

al expenses, intended to be covered by the compensation allowed by law. Throop Public Officers, 495; *People* v. *Wemple,* 115 N. Y., 302; *Briscoe* v. *Clark,* 95 Ill., 303.

(*5*) The term *"per diem"* as used in Article 2, Section 23, is synonymous with "salary." The term salary imports the idea of compensation for personal service, and not the repayment of money expended in the discharge of the duties of the office. Throop Public Officers, 441. (*6*) Compensation attached to the office, whether "salary" or *"per diem"* (22 R. C. L., p. 526, Note 4) is not given to the incumbent because of any supposed legal duty resting upon the public to pay for the service (*Moore* v. *Strickling,* 50 L. R. A., 280), and a law creating an office without any provision for compensation carries with it the implication that the services are to be rendered gratuitously. 22 R. C. L., p. 532. The object in allowing compensation for official service is to enable public officials to give due attention to their official duties. *State ex rel.* v. *Nashville,* 15 Lea, 705.

(*7*) These principles touching the duty of the citizen in serving the State are derived from the common law and were understood when the Constitution of 1870 was promulgated, and when the provision therein was made to compensate members of the General Assembly, and the allowance for compensation was intended to cover the personal expenses of members, that is expenses incident to their personal comfort, convenience and taste, and so to be distinguished from official expenses, that is, expenses arising from the performance of official duty. *Hewblin* v. *City,* 15 Conn., 545; *Dixon* v. *Shaw,* 50 A. L. R., 1237.

(*8*) The cases holding that compensation fixed by statute, without specific provision for expenses, limits the amount a public official may receive, are inapplicable

because there the right to an allowance for official expenses is dependent upon whether the statute authorizes it, as indicated in *Whitthorne* v. *Turner,* 155 Tenn., 303. Here the controlling question is whether the Constitution imposes a restraint, without which the Legislators, under the plenary power, may provide for official expenses.

The rule is well stated in 29 Cyc., 1427-1429, as follows:

''Where the compensation is fixed by the Constitution, or where there is a constitutional provision prohibiting such change during the term of an incumbent, no change of salary during such term is permissible. . . . Such limitations do not affect provisions for expenses, except that use may not be made of a power to increase an allowance for expenses so as to increase compensation received by an officer.''

Constitutional provisions which expressly or by implication prohibit the increase or decrease of compensation of officers are controlled by a sound public policy, and the principle upon which they rest cannot be ignored nor may their requirements be evaded. Article 2, Section 23, expressly fixes the compensation of members of the General Assembly. By implication it carries a restraint against any action to the contrary (*Keith* v. *Funding Board,* 127 Tenn., 451), hence forbids any enactment that would either directly or indirectly increase or diminish the compensation therein fixed.

(*9*) If the appropriation in question amounts to a gratuity, or an increase of compensation, the Legislature had no power to make it, that is to say, is restrained by the Constitution;

First, because Article 11, Section 8 of the Constitution operates to prevent the granting of favors or benefits to individuals, and the power of taxation which is lim-

ited to public use, by implication confines the power of expenditure to like uses.

(*10*) Second, as said in *State* v. *Thomason,* 142 Tenn., 533, "It is  .  .  .  to be conceded at the outset that the appropriation made is unconstitutional and void, if the same can by proper construction be held to be an effort on the part of the Legislature to increase the compensation of the members of that body beyond the amount mandatorily fixed by Section 23, Article 2, of the Constitution. By all rules of constitutional interpretation the amount therein designated as compensation to the legislators is to be deemed a direct limitation upon the power of the Legislature to make any other or different allowance for that purpose; it is the mandatory and conclusive direction of the people upon the subject, to alter which every branch of the government is equally powerless."

The power of the court to determine the object of the appropriation is questioned by the defendants. It is said the inquiry would be an invasion of the powers of the legislative department.

In the exercise of any power, legislative or otherwise, constitutional restraints must be observed, and it is always a judicial question as to whether or not those restraints have been ignored or overlooked by the Legislature in passing a statute. 6 R. C. L., p. 70, secs. 67-68 and Notes.

The defendants further insist that the declaration by the Legislature of the purpose for which the appropriation was made is a conclusive finding of fact which the Court cannot review. The principle underlying this proposition relates to the separation of governmental power among the co-ordinate departments, and the right of each to exercise its powers without interference from

the others. The courts, careful to observe the ideal expressed by the letter and spirit of the Constitution, avoid encroachment upon the other departments, and sustain each in the exercise of its legitimate functions, and so the rule that every inquiry into the validity of a legislative act is approached with the presumption that the legislature observed the Constitution, and when validity depends upon the existence of certain facts, the legislative determination is conclusive. That is to say, a separate investigation dependent on extrinsic facts is not permissible in a judicial inquiry. *Chicago* v. *Shaynin,* 45 L. R. A. (N. S.), 26; *People* v. *Dorston,* 7 L. R. A., 716.

Observance of the rule also forbids inquiry into the conduct and motives attributable to the members of the General Assembly in the enactment of a statute. *Lynn* v. *Polk,* 8 Lea, 121-328. The reason underlying the rule may be better emphasized by adding that what the accredited representatives of the people declare to be for the public good must be accepted as true, and their finding of the facts toward which a statute is directed, in favor of one side of a controversy over which there is room for differing opinion, is conclusive upon judicial inquiry as to the validity of the Act, because political considerations are for the legislature. The constitutionality of the Act cannot be made dependent upon facts, or policies about which political groups may differ, or concerning which the court might upon inquiry reach a different conclusion. These things are political and are confided to the discretion of the legislature. For application of the rule see *Lowenthal* v. *Underdown,* 132 Tenn., 560; *Quinn* v. *Hester,* 135 Tenn., 373. Hence the general rule that the legislative determination of

facts is conclusive, and the courts cannot reopen the question or make new findings. 6 R. C. L., 111, 112.

(11) This rule has been often applied in opinions involving the validity of legislative classification for purposes of taxation and for the enforcement of police regulations. *Condon* v. *Maloney,* 108 Tenn., 82. But in cases of that character, the presumption is *prima facie,* not conclusive. The court is not required to assume the existence of any fact that cannot be reasonably conceived. 12 C. J., sec. 220, p. 798; *Motlow* v. *State,* 125 Tenn., 559, 560. But this discussion involves an inconclusive proposition. Let us consider the Act and its purpose and effect, or the result it was intended to accomplish. It is not the form of a statute or the words that are used, but the object intended and the result reasonably effected by their use that must control the determination. *Standard Oil Co.* v. *State,* 117 Tenn., 639; *Mugler* v. *Hanson,* 123 U. S., 623.

For the purpose of determining the constitutionality of a statute, it is the function of the court first to ascertain its meaning by the application of ordinary canons of construction, and then to decide whether, as thus construed, the enactment is within the scope of the legislative power. The construction of a statute which brings it in conflict with the constitution will nullify it as effectually as if it had, in express terms, been enacted in conflict therewith. Wherefore if it appears from a view of the Act of appropriation that its natural and reasonable effect is to supplement and increase the compensation of members of the General Assembly it would be void.

(12) The Constitution fixes the compensation of no officer or employee of the State except that of members

of the Legislature and that body cannot alter the compensation so established. Otherwise the power of the Legislature to regulate the pay of State officers and agents is unrestrained, except that they cannot increase or diminish the salary of the Governor or of a judge during the term for which such functionary is elected. Constitution, Art. 3, Sec. 7; Art. 6, Sec. 7.

(13) The appropriation in question is embodied in the General Appropriation Bill, Chapter 53, Acts of 1927, the caption of which is as follows:

"An Act to appropriate money out of the State Treasury for the purpose of defraying the expenses of the State Government for Two Years, commencing July 1, 1927, also legislative expense."

Section 1 provides:

"That the appropriations hereinafter set out are hereby made for the purpose of defraying the expenses of the State Government for Two Years, commencing July 1st, 1927, except the legislative items which shall be payable on or before the adjournment of the Sixty-fifth General Assembly, which appropriations shall be paid out of the State Treasury upon the warrants of the Comptroller, after such warrants have been authorized by the Department of Finance and Taxation."

Following this on page 137 under the heading "Legislative" we find this provision:

"There shall be appropriated out of any money in the Treasury ($750) Seven Hundred and Fifty Dollars, for Postage, Stenographic hire and other necessary expenses to each member of the General Assembly, and the State Treasurer is hereby authorized and directed to pay said sum of money as above set out."

The constitutionality of an Act depends on its real character, and on the end designed to be accomplished, and the Courts are not concluded by mere declarations, for in whatever language a statute may be framed, its purpose and constitutional validity must be determined by its natural and reasonable effect. 6 R. C. L., Sec. 79, 12 C. J., Sec. 219, p. 787.

It is apparent from the provisions of the Act that it was intended for "each member" of the General Assembly to receive, alike, the fixed sum of $750 without regard to the amount of official expenses in fact incurred by each of the several members. The Legislature did not find and declare in the Act that each of the members of the Legislature had expended $750, or any specific sum for stamps, stenographic hire, or on any other account that might properly be classed as official expenses. Nor did the Legislature provide the mode or the agency through which to determine what, if any, official expenses were incurred by "each member" and the amount thereof, so as to distinguish the appropriation in gross from either a forbidden gift or a forbidden addition to compensation.

(14) To sustain an appropriation in gross as an allowance for expenses and not a forbidden increase of compensation, the sum must be within such reasonable limits as to authorize the conclusion that the sum in gross might be covered by a certified statement of the official expenses incurred by the designated beneficiary. An appropriation in gross so large as to suggest that it would not be covered by an itemized statement of official expenses, and so appropriated as to make it the absolute property of the official without regard to actual expenses, is an increase of compensation.

The Constitution having fixed the compensation of members for the discharge of their official duty, by implication forbids an allowance for their personal expenses. Official expenses only could be allowed, and all that the members could claim under the Statute would be the expenses incurred in the performance of official duty to the exclusion of personal expenses.

In *State* v. *Thomason, supra,* the appropriation of $150 in gross to cover stenographic hire and other necessary expenses of members of the General Assembly was not assailed as excessive. It appears to have been assumed that if expenses could be allowed the allowance in gross to each member instead of by items to be certified, was not an unreasonable amount for the expenses incurred.

It was contended that the appropriation was invalid because the constitutional provision fixing compensation impliedly excluded the power of the Legislature to provide for expenses of any character, and that the appropriation was intended to supplement compensation. In support of this contention, extrinsic facts were presented, and it was insisted the court should consider this extraneous evidence and from it determine that the amount appropriated was intended to supplement compensation.

Referring to the insistence that extrinsic facts should be considered the court replied:

"The language used in the act is '$150 for stenographic work and other necessary expenses to each member of the General Assembly.' This is a clear and unambiguous statement of the purpose for which the appropriation is made. The language is plain, and does not require amplification or the application of any rules

of statutory construction in order to ascertain the legislative intent. *Hickman* v. *Wright,* 141 Tenn., 412-418, 210 S. W., 447. It is always to be presumed that the Legislature acted in good faith and within constitutional limits; and this declaration of the Legislature is a conclusive finding of facts and imports a verity upon its face which cannot be impugned by litigants, counsel, or the courts, but is absolutely binding upon all.''

We do not conceive that the court intended by this statement to announce the rule that the Legislature could by the use of words prevent judicial inquiry as to the object and effect of a statute, or that the Legislature could by a declaration transform a private benefit into a public use, or increase compensation by a declaration that it was intended for expenses.

The court is required to look to the substance and effect of an Act, as well as to its letter, when called upon to determine whether the Legislature transcended the constitutional restraints. The court could not of course inquire about the motive of the Legislature, or of any members, nor consider the wisdom or policy underlying a statute. Neither could the court call to its aid extrinsic facts, but resorting to well-known rules of statutory construction, the court must determine whether the object and the effect of a statute is contrary to the Constitution.

The regular session of the General Assembly covered seventy-five days. The Act allowed to each of the 132 members without regard to their several requirements, $750 for expenses and ordered that it be paid directly to them. Coming as the 132 members do from different sections of the State, and representing constituencies varying in numbers and requirements, assigned as they

severally are to committees and other official duties varying in character and extent, it cannot reasonably be inferred or conceived that the expenses of all members would be uniform, or that the official expenses of each and every one of them would be equal to the arbitrary sum fixed by the act of appropriation, and ordered paid to them directly. Neither consideration of extrinsic facts nor legislative motive is essential to this judicially impelled determination. It is patent on the face of the legislation.

The Act, carrying words descriptive of the appropriation, is not a finding of fact that the conditions authorizing its payment have been met. That is to say, that the expenses therein provided for were actually incurred. The Act contains no statement of the expenses incurred by members. There is no provision under which the members are required to make a showing of official expenses. Neither this Act nor any other statute provides a mode for the ascertainment of that essential fact. Each member was authorized to receive the entire sum appropriated and use it at will, thus evincing the intent to increase the compensation of members of the General Assembly to the extent that the sum appropriated to each exceeded his official expenses, contrary to the Constitution.

We are afforded no means of distinguishing the forbidden increase of compensation from such official expenses as each of the several members may have incurred, therefore, must reverse the decree of the Chancellor, sustain the bill, and order that the injunction be made perpetual.