STATE ex rel. DOTY v. STYKE et al.—199 S. W. (2d) 468.

Eastern Section. September 6, 1946.

Petition for Certiorari denied by Supreme Court, January 11, 1947.

622

Susong, Parvin & Fraker and Kilgo & Armstrong, all of Greeneville, for appellants.

Milligan & Haynes and Conway Maupin, all of Greeneville, for appellees.

BAPTIST, J. This opinion relates to two cases in which appeals have been perfected from two decrees rendered by the chancery court of Greene County against the defendant, Q. N. Styke, and the sureties on his official bonds as sheriff of said county.

Separate records and briefs have been filed in each case, but the records are practically the same and identical questions are raised. Therefore, the two cases are disposed of in the one opinion.

In one of the cases Greene County sues the defendant and his sureties under the general salary law for alleged

fees collected by the defendant Styke during his term of office as sheriff of said county beginning September 1, 1932, and ending August 31, 1934.

In the other case the said defendant is sued for alleged excess fees collected by him during his term of office as sheriff for the term September 1, 1936 to August 31, 1938.

In the first mentioned case there was a judgment against the defendant and the sureties on his official bonds for $3,120.74 and in the second case for $7,563.81.

From each of these judgments both parties have appealed and assigned errors.

In each case it is alleged that the defendant Styke as sheriff of Greene County was entitled to a salary of $5,000 per year under the general salary law which was applicable to said county. Said salary being payable out of the emoluments of the office after deducting expenses allowable as a credit, and that such emoluments exceeded the amount of such salary.

That said defendant before he was entitled to his said salary was required by law to keep a complete account of all fees, emoluments, and compensation collected by him from all sources accruing by reason of his office and file monthly, itemized reports of same.

That in event such records were kept and reports filed the defendant was entitled to deduct from such gross income the necessary expenses incurred by him in operating the jail and in the discharge of certain other duties designated by law, provided that itemized statements properly evidencing such expenditures had been filed as required by law.

That the defendant was entitled to deduct from such gross income the salaries of deputies, assistants, and clerks, provided that he made proper application to the

circuit court for Greene County and same had been allowed.

That the defendant was required by law to remit to the trustee for Greene County on the first days of April and September of each year all of his fees, emoluments, and compensation collected in excess of his legal deductions.

That no records were kept and no monthly reports were filed as required by law.

That no application was made to the circuit court for deputies' or clerks' salaries, and no such allowance was made.

That no itemized statements evidencing office or miscellaneous expenses were filed and no amounts paid to the trustee for Greene County as required of the defendant by law.

That the defendant at the end of each quarter of said term presented to Greene County a statement of the amount alleged to be due him for feeding prisoners and for turnkeys, which amounts were paid to him by the county.

That the defendant was not entitled to receive such amounts for the reason he had already received the full amount of his salary from other sources, and for the reason that he had failed to keep the records and make reports of expenses incurred, including the cost of feeding prisoners. The bill prays for an accounting.

The defendant filed an answer and cross-bill in each case. In answer it is denied that the settlements called for under the general salary law were required of him for the reason that the emoluments of his office, after deducting his necessary and legitimate expenses, amounted to less than the amount of salary allowed by law.

That he operated his office in the same manner as his predecessors and kept such books and records as he un-

derstood were required, and that if he failed to comply with the law it was because he did not know or understand what the requirements were; that no demand was ever made on him for any accounting or settlement other than the quarterly reports which were filed by him.

That the quarterly county court having fixed the amount to be paid him for feeding prisoners, the complainant has no interest in the same and is not entitled to an accounting for same.

That the complainant is not entitled to any part of the fund received for feeding federal, city, or state prisoners; and that such funds are not emoluments of his office.

It is alleged that it had been stipulated that in the office of sheriff for the terms involved and in the necessary discharge of his duties, the defendant incurred expenses for deputies, clerks and jailers and for the purchase and maintenance of two automobiles for which he was entitled to credit and for other expenses in feeding prisoners, and that he was entitled to credit for all his expenses out of the proceeds of his office and prayed for a settlement and accounting with Greene County.

The chancellor was of the opinion that the appropriation by the county court for feeding prisoners, in excess of actual cost, would be an emolument of the office of sheriff; that any sums received by the sheriff for feeding prisoners whether they be state, county, city, or federal prisoners, less the actual cost of feeding them, is an emolument of the office.

This holding is the basis of an assignment of error on the part of the defendant.

Code Sections 10726, 10727 classify the counties of the state, fixing the salary of the sheriff according to population and Greene County falls within the classification which fixes the salary of the sheriff at $5,000 per annum.

Code Section 10725 provides that: "Sheriffs shall be deprived of all their fees, commissions, emoluments and perquisites that shall accrue, or be received by virtue of their respective offices; . . . and they shall be compensated for their services by salaries . . ., which salaries shall be in lieu of all other compensation."

Code Section 10729 provides that the sheriff shall: Keep a complete account of every fee of every nature, commission, or charge collected by him . . .; and he shall file an itemized statement thereof monthly, under oath, with the chairman or judge of the county court of his county who shall preserve same as a part of the record of his office; and he shall make a remittance to the office of the county trustee of his county twice per year on September the first and April the first, of all of said fees, commissions, and charges in excess of his salary, together with the salaries of his deputies and assistants and the expenses of the office, as hereinafter provided; and such salary of the officer, the salaries of his deputies and assistants and the office expenses must be shown and itemized in the statements filed in the office of the county judge or chairman."

The only exception is where the fees do not amount to the salary fixed by law.

Code Section 10730 provides that: "All the excess fees, commissions, perquisites, and emoluments, no matter whether such sums arise from fees, commissions, perquisites, or emoluments by order or by direction of court, that are or may be directly or indirectly collected by virtue of their offices by . . ., sheriff, . . ., shall be paid to the county trustee as a part of the county revenue, and the same when accrued are declared to be the property of the respective counties wherein the same are collectible."

Code Section 10713 provides that by resolution the county court may fix an allowance to the sheriff for feeding prisoners, the minimum being at 50 cents per day and the maximum at 75 cents per day. For a part of the prisoners days fed during his term 1932-1934, the defendant Styke, by order of the court, received 50 cents per day per prisoner, and for a part of the time he received 60 cents per day per prisoner.

The contention of the defendant is that in fixing the allowance for feeding prisoners the county court was either acting in a judicial capacity and that its finding as to costs was a final determination of that, or that it was acting in a legislative capacity and that the declaration of an expense allowance is a conclusive finding of fact and binding upon all concerned.

This contention is based upon the opinion of the court in State ex rel. v. Thomason, 142 Tenn. 527, 221 S. W. 491, 492, in which the court construed an act making an allowance to the members of the General Assembly of "$150 for stenographic work and other necessary expenses," and in which the court said that it is always presumed the legislature acted in good faith and within constitutional limits; and that the declaration of the legislature is a conclusive finding of fact and imports a verity upon its face which cannot be impugned.

The defendants also cite the case of Peay v. Nolan, 157 Tenn. 222, 7 S. W. (2d) 815, 60 A. L. R. 408, in which such allowance was made to the members of the General Assembly in the amount of $750.

In this case the court, in discussing the Thomason case, said, 157 Tenn. at page 239, 7 S. W. (2d) at page 819, 60 A. L. R. 408: "We do not conceive that the court intended by this statement to announce the rule that the Legislature could by the use of words prevent judicial

inquiry as to the object and effect of a statute, or that the Legislature could by a declaration transform a private benefit into a public use, or increase compensation by a declaration that it was intended for expenses."

And, 157 Tenn. at page 240, 7 S. W. (2d) at page 820, 60 A. L. R. 408, it is said: "The act, carrying words descriptive of the appropriation, is not a finding of fact that the conditions authorizing its payment have been met; that is to say, that the expenses therein provided for were actually incurred. The act contains no statement of the expenses incurred by members. There is no provision under which the members are required to make a showing of official expenses. Neither this act nor any other statute provides a mode for the ascertainment of that essential fact. Each member was authorized to receive the entire sum appropriated and use it at will, thus evincing the intent to increase the compensation of members of the General Assembly to the extent that the sum appropriated to each exceeded his official expenses, contrary to the Constitution."

We are of the opinion that the passage of a resolution of the county court fixing the allowance under Code Section 10713 for feeding prisoners is not a judicial act because such resolution is not based upon any facts, nor does the code section require the county court to find any facts or inquire as to any facts.

While the passage of such a resolution is a legislative act, we do not think it is a conclusive finding of fact binding upon the county, or that the appropriation becomes the property of the sheriff. We are of the opinion that any profit arising to the sheriff from such an appropriation is an emolument of his office and the amount of such profit in excess of his salary is the property of the county.

■ The effect of the holding in the case of Peay v. Nolan, supra, is that an allowance to a public official for expenses covers the actual cost of expenses arising from the performance of his official duties, and that any excess over the actual cost of such expenses is an increase in compensation.

We think the proper application of this principle to the instant case is that any appropriation by the county court for feeding prisoners in excess of the actual cost would be a compensation or emolument of office, and in the case at bar if such excess in addition to the other emoluments of the office exceed $5,000 per year, such excess becomes the property of the county.

The Act provides that perquisites and emoluments that are or may be collected directly or indirectly by virtue of the office shall be paid to the trustee. We think there is no other conclusion but that an excess profit on feeding prisoners is an emolument or perquisite of the office and that the defendant received such by virtue of his office.

It is not contended by the defendant that the allowance, or appropriation by the county court, does not exceed the actual cost. The insistence is that if the court holds that the excess of the appropriation above the actual cost is an emolument of the office, then the cost should be fixed at 40 cents per prisoner per day instead of 33 cents as found by the chancellor for the defendant's 1932-1934 term.

The defendant Styke kept no accounts as provided by Code Section 10729, and filed none with the county as provided.

A number of depositions were taken and introduced by both parties on the question of a reasonable cost of feed-

ing prisoners during the defendant's terms 1932-1934 and 1936-1938.

The witness, Frank Quarles, was sheriff of Jefferson County from 1934 to 1940. He gives an estimate of the cost of feeding prisoners from 1934 to 1936 at 45 cents per day and from 1936 to 1938 at 60 cents per day.

J. L. Shanks was sheriff of Hawkins County from 1926 to 1930 and from 1932 to 1934. His estimate of the cost of feeding prisoners from 1932 to 1934 was 40 cents per day.

J. H. Howe was sheriff of Hawkins County from 1934 to 1940. His estimate of the cost of feeding prisoners from 1934 to 1938 was around 58 or 60 cents per day.

C. M. Combs was sheriff of Hawkins County from 1940 to 1942. His estimate of the cost of feeding prisoners was between 55 and 60 cents per day.

C. R. Young was sheriff of Washington County from 1936 to 1938 and from 1940 to 1942. He testified that during the first mentioned term he was unable to operate on 50 cents per day which was allowed by the county court and that for the subsequent term the county court allowed 75 cents per day on an agreement that he would return to the county any excess profit; that the actual cost during that term was 65 cents per day for feeding prisoners.

R. W. Smith was sheriff of Blount County from 1932 to 1938. His estimate of the cost of feeding prisoners from 1932 to 1934 was from 40 to 47 cents and from 1936 to 1938 was from 49 to 50 cents per day.

The defendant Styke testified in detail as to the nature and amount of the food furnished to prisoners and his estimate of the cost of feeding prisoners during his term 1932-1934 was 40 cents per day, and for the term 1936-1938 was 46 cents per day. The testimony of the defendant is that during his terms as sheriff he served to

prisoners an abundance of wholesome food and varied diet. In this he is corroborated by the jailers who served under him.

Joe J. Richards, Certified Public Accountant and County Auditor for Sullivan County, testified that he audited the sheriff's office of that county during the period from September 1, 1936, to September 1, 1938, and that during that period the "raw food cost" averaged .226c per day per prisoner.

J. D. Newland was sheriff of Sullivan County during the period indicated in the testimony of Richards and testified to the character and quantity of food furnished prisoners by him as sheriff. From his testimony we conclude that his prisoners received a limited and scanty fare although he says he fed them "a sufficient amount of substantial food to maintain their health and strength."

E. S. Smithson testified that he was bookkeeper for Bruce Williams, sheriff of Greene County during a term 1934-1936, and that for a period of "a month or so" during said term he kept a record of the cost of feeding prisoners and that for one of the periods the cost ran around twenty-two and a fraction cents, and for another period around 24 cents per prisoner per day.

G. H. Shoun testified that he had examined the Greene County sheriff's record of expenses for the term 1940-1942, and that from such examination the cost of feeding prisoners was .1869c per day per prisoner.

The complainant contends that from this evidence the allowance for the term 1932-1934 should be fixed at no more than 21 cents per prisoner, and the defendant contends that it should be fixed at 40 cents per day.

The chancellor, after a review of the evidence, found that a fair and reasonable price for the defendant's term 1932-1934 was 33 cents per day for each prisoner, and

that a fair and reasonable price for the defendant's term 1936-1938 was 37 cents per day.

While the evidence is unsatisfactory and some of it of little probative value owing to the failure of the sheriff to keep any records and from a lapse of time, we find no reason to disturb the chancellor's finding. We think his conclusion is as reasonable as can be reached under the circumstances.

Assignments are made to the action of the chancellor in holding that the defendant Styke is required to account for the difference between the amounts received by him and the actual cost for feeding town, state, and federal prisoners.

These assignments involved the same questions presented on the assignment heretofore discussed.

The excess profit accruing to the sheriff on account of feeding prisoners is an emolument of his office and was received by virtue of his office and as such he is liable to the county for any excess profit in whatever category the prisoners were held.

An assignment of error is made on the action of the chancellor in holding that the court was without jurisdiction to allow the defendant Styke credit for hiring deputies and assistants.

There is a stipulation in the record to the following effect:

"That Q. N. Styke as Sheriff of Greene County for the official term September 1st., 1932 to August 31st., 1934, in the necessary discharge of his duties and in the necessary operation of his office as Sheriff incurred the following expenses:

"1—Salary for Clerk, $2,040.00.

"2—Day jailer's salary $1800.00.

"3—Night jailer's salary $1200.00.

"4—Salary of Chief Deputy $2400.00.

"5—Special deputies paid by Sheriff for special services $400.00.

"6—Cost of two automobiles, $1400.00.

"7—Expense in operating automobiles, $2600.00.

"8—Deputy for waiting on County Court $24.00.

"It is agreed that the foregoing items of expense were actually incurred by the said Q. N. Styke for the term indicated in the operation of the office of Sheriff of Greene County, and were necessary expenditures by him, in operating the office.

"While the items above listed were actually paid by the said Q. N. Styke, it is not intended by this agreement, on the part of the complainant, that he is to be given credit therefor on the trial of this case, but the matter of allowance of same is left to the trial court.

"In the event the said Q. N. Styke can establish by competent proof other expenses not herein listed, this agreement is not intended to preclude him from so doing."

The same stipulation is made in the suit involving the defendant's term 1936-1938, the only difference being in the amounts involved.

The contention of the defendant is that the court having taken jurisdiction for one purpose will assume jurisdiction of all matters involved in order to do full and complete justice between the parties, and that the defendant is entitled to such credit as a matter of equity.

Code Section 10731 provides that no deputies nor assistants shall be employed unless necessary to conduct the affairs of the office. The stipulation provides that the deputies and assistants employed by the defendant were necessary to the conduct of his office. The above code section further provides that before such expenses is in-

curred application must be made to the judge of the circuit court and the allowance made by the court.

Code Section 10731 providing for the appointment of deputies and assistants was construed by the Supreme Court in the case of State for Use of Obion County v. Bond, 157 Tenn. 326, 8 S. W. (2d) 367, 368, in which it is said:

"Looking to the Act of 1921 as a whole, we think it quite apparent that the Legislature contemplated the allowance to these officers, whose salaries were therein definitely fixed, of additional salaries for deputies or assistants only on condition that application should be made for such allowances in the manner and form set forth with great detail and precision in Section 7 of the act. While it is true that the act clearly recognizes the right of an officer to reasonable allowances for such purposes, as insisted for appellant, he is permitted to employ such deputies and assistants only in the manner and under the conditions prescribed, and we are of opinion that time is of the essence of this provision. It is clear that it was the intention of the Legislature that this application to the Chancellor, and the hearing before him for the purpose of determining the number of deputies and the salaries to be paid them, should be made in advance of the expenditures, and not by way of ratification merely. Not only is this quite apparent on the face of the act itself, but reasons suggest themselves why such a course is proper and desirable. It is to be observed that the supervision by the chancellors provided for by the act over the expenditures of these officers for deputies is a continuing supervision throughout the terms of office; express provision being made for modification and extension of allowances from time to time upon the application of either the county or the officer. This

strengthens the conclusion that it was not the intention of the Legislature that an officer might totally disregard these vital provisions of the act throughout his entire term of office, and then, when demand is made by the county for an accounting, reply that he had, arbitrarily and of his own independent action, paid certain salaries to deputies and assistants, and claim credit therefor.

"The provisions for settlement with the county trustee from time to time are in no way in conflict with the view we have expressed, and this is also true of the itemized statement required to be filed monthly with the chairman or judge of the county court.

. . . . . . .

"In further reply to the insistence that this court, as a matter of equity, should now make these allowances, which on the face of the pleadings appear to have been such as would have been originally proper, and that an order to this effect should be entered now for them, we are constrained to deny that such disposition is authorized or proper. This is true not only for the reasons already suggested, but the cross-bill contains no suggestion of a plausible or reasonable excuse for the failure of the defendant to comply with the plain mandate of the law, and the pleadings therefore offer no basis for indulgence. The chancellor to whom this application has been presented, fully five years after the time when the act contemplated that it be presented, is necessarily not in a position, and could not now be placed in a position, to pass upon the making of such an order under circumstances and upon evidence sufficiently identical."

Subsequently the legislature enacted Chapter 52, Acts of 1931, Code Section 10748 1, which is as follows:

"Refund of payments by county officers to assistants and deputies; release of county officers upon settlement. —The various quarterly county courts of the state are empowered to refund payments made to the county by the county court clerks, chancery court clerks, probate and circuit clerks, and clerks of criminal and special courts, county trustees, registers of deeds, and sheriffs, in cases where they have failed to obtain credit for payments made by them to assistants and deputies out of the fees of their offices collected by them and have been compelled to account therefor to the county by reason of having neglected to apply to and obtain orders from the courts authorized by law, authorizing the employment of such deputies and assistants; provided, it shall be made to appear that the officers could not properly and efficiently conduct the affairs and transact the business of their office by devoting their entire working time thereto and it was actually necessary to the proper conduct of same to employ such assistants and deputies, and that only such assistants and deputies were employed and at such salaries and under such facts as would have been sufficient to justify the courts to whom such applications should have been made, to have made orders for the employment of such assistants and deputies and at the salaries paid them; and provided further, that the failure to file petitions with the courts and obtain the orders necessary for the employment of such assistants and deputies was on account of misapprehension and misunderstanding of the requirements of the law and such failure was in good faith; and provided further, that nothing shall be refunded to such officers on account of the employment of assistants and deputies except and only such as said officers would have been entitled to under the law had the

petitions been filed and the orders obtained as required by the statute.

"The quarterly county court of any county in the state is hereby authorized to release any county official in his settlements with the county from the payment of any sum or sums theretofore made by such county official for assistants or deputies when such official would have been entitled to employ and pay such assistants and deputies had he made application to the proper court for authority to employ them under the provisions of chapter 101 of the Public Acts of 1921."

In October 1938 the quarterly county court passed a resolution to have appointed a committee to audit the books and records of the defendant Styke to ascertain what excess fees, if any, were due the county.

Thereafter the defendant petitioned the county court to have allowed him in settlement the amounts expended by him for clerk hire, deputies, and jailers, which petition was denied by the court. At another time a similar petition was filed by the defendant, but the court adjourned without action on same.

The chancellor was of the opinion that the authority to release an official in his settlement is exclusively in the quarterly county court, and that jurisdiction of the claims for credit for salaries of deputies, assistants, and clerks cannot be conferred on the chancery court by consent, the same being the subject matter of the litigation.

The defendant contends that the chancery court has jurisdiction of the question upon the principle that where that court has jurisdiction for one purpose it will take jurisdiction for all purposes.

There can be no doubt of this general principle.

In this case the county seeks the aid of the chancery court in a settlement of the accounts of the defendant, but

contends that the court is without jurisdiction to allow any credits for expenses because the defendant failed to file the monthly reports required and because he failed to make application to the circuit court for an allowance for deputies and assistants. In the case of State v. Bond, supra, the court holds that although the face of the pleadings might show that the allowances would have been reasonably proper they could not be allowed as a matter of equity and as a further reason adds that, ''The cross-bill contains no suggestion of a plausible or reasonable excuse for failure of the defendant to comply with the plain mandate of the law, and the pleadings therefor offer no basis for indulgence.''

We find no reasonable construction of this language except that if the defendant had offered a reasonable excuse the court would consider the same as a matter of equity.

Subsequent to the opinion in the Bond case, the legislature enacted Code Section 10748.1 providing that an official may be relieved under certain conditions, one of which was, ''on account of misapprehension and misunderstanding of the requirements of the law and such failure was in good faith,'' and authorized the county court to relieve an official who complied with the conditions. We think the purpose of the Act is to relieve officials from mistakes honestly made.

The record shows that the defendant Styke was a farmer with very little if any business experience; that upon entering the duties of the office he inquired about and followed the course of his predecessors in office; that no sheriff prior to his election had complied with the general salary law; that it was never suggested to him that such a law was in existence; and that his failure to

comply with the same was due to ignorance and not to bad faith.

The stipulation is that the sheriff incurred the expenses for clerk and deputy hire in the necessary discharge of his duties and in the necessary operation of his office as such.

■ We think it apparent that under the stipulation that such expenses being necessary in the operation of the office such allowances would have been made by the circuit court on proper application.

We think, also, that the defendant has complied with the conditions prescribed in Code Section 10748.1.

In this case no reason is assigned for the action of the county court in refusing to relieve the defendant of the mistake made under his misapprehension of the law and in good faith. Therefore, the action of the county court was arbitrary and capricious.

As said, the County has sued the defendant for a settlement of his accounts and seeks to recover in settlement these amounts which he paid for clerk hire and assistants. In such case a court of equity will intervene that full justice may be done between the parties.

■ We think that the legislature granted to the county court a power to be used in a case falling within the provisions of the Act and the fact that the county court fails or refuses to exercise this power does not preclude the chancery court from granting the relief in a proper case.

■ We do not think the Legislature intended that a county should be permitted, as in this case, to stipulate that the expenses for deputies incurred by the defendant were reasonable and necessary in the operation of the office and also to arbitrarily decline to allow such expenses in settlement.

We are of the opinion that the chancellor was in error in his conclusion that the defendant is not entitled in settlement with the county to the amounts expended for clerks and assistants.

The chancellor held that the defendant is entitled to credit for other expenses in connection with the operation of his office including the depreciation on two automobiles and expenses of operating same, which items amount to $3700. His conclusion in this respect is based on Code Section 10737 providing: "The sheriff of each county is authorized to include in his expense account as part of the expenses of his office, the necessary cost of arresting criminals, of furnishing and operating the county jail, and maintaining the state and county prisoners therein, and all other necessary and legitimate expenses incurred in the proper and efficient administration of his office."

We think the chancellor was correct in his holding that the expenses mentioned are necessary costs incident to the arrest of criminals and that the sheriff was authorized to include same as a part of the expenses of his office without application to the court for authority for making such expenditures. We agree with this conclusion under the terms of the statute above set out

In the case involving the defendant's term 1932-1934, the stipulation is that the defendant in the necessary operation of his office incurred expenses of $7,440 in employment of clerk, chief deputy and for day and night jailers.

In the term involving the defendant's term 1936-1938, the stipulation is that the defendant in the necessary operation of his office incurred like expenses of $9,454.

With the allowance of these amounts as credits to which we think the defendant is entitled in the respec-

tive cases, it results that the emoluments of the office in the respective terms of office do not exceed the amount of the salary to which the defendant was entitled under the general salary law.

The defendant contends that he is entitled to judgment against the county for certain turnkey fees and for prisoners' board during the last quarter of his 1936-1938 term; also for a board bill presented to the state and turned back to be recharged against the county because the state officials were of the opinion that these were county prisoners and not state prisoners.

There is no evidence in the record upon which to predicate such judgment.

As to this contention there appears an exhibit to the deposition of S. W. Doty, County Judge, of amounts "reported by sheriff for last quarter and not paid by Greene County," and the testimony of the defendant that he charged the state with feeding certain prisoners and that the state held they were county prisoners; that, "as he recalled," the amount was around $200, and that he did not recall whether he ever listed it with the county or not.

For the reasons assigned the decree of the chancery court in each case is reversed and in each of the cases here disposed of the bill is dismissed at the cost of the complainant, Greene County.

All members of the Court, sitting en banc, concur.