BURRIS *v.* STATE.

Opinion delivered December 24, 1904.

1.  MOTION FOR NEW TRIAL—WAIVER OF EXCEPTIONS.—An exception to the court's charge, saved at the trial, but not carried into the motion for new trial, will be treated on appeal as abandoned.  (Page 456.)

73   453
74   258

73   453
85   405

2. ABORTION—ADMINISTERING MEDICINE TO PRODUCE.—One who sends medicine to a woman with child with intent to produce an abortion is guilty of administering or prescribing medicine to a woman with intent to produce an abortion before the period of quickening, within Sandels & Hill's Digest, § 1459, although he was not present when the medicine was delivered to her, and although the messenger by whom it was sent knew of the woman's condition, and what the medicine was sent for. (Page 456.)

3. SAME—DEFENSE.—In a prosecution for prescribing medicine to a woman with intent to produce an abortion before the period of quickening, it is no defense that the medicine prescribed was not taken, or, if taken, that it failed to produce the abortion, or premature delivery. (Page 457.)

Appeal from Pope Circuit Court.

WILLIAM L. MOOSE, Judge.

Affirmed.

### STATEMENT BY THE COURT.

The statute under which appellant was indicted and convicted provides that "it shall be unlawful for any one to administer or prescribe any medicine or drugs to any woman with child, with intent to produce an abortion or premature delivery of any fœtus before the period of quickening." Sand. & H. Dig. § 1459. The indictment charged that appellant "unlawfully and feloniously did administer and prescribe to one Nela Burris, a woman with child, before the period of quickening, a large quantity of medicine and drugs, with the felonious intent then and there and thereby to produce abortion."

The proof by the prosecutrix tended to show that she had sexual intercourse with appellant about the 1st of August, 1902, and discovered that she was pregnant a month or two afterwards, and told appellant about it, who said he would have to give her some medicine to take. She said that appellant did give her some tablets to take about the 1st of October, and again about the 1st of November, 1902, and told her to take them "every two or three hours;" said that she took part of them, and that the purpose in giving her the medicine was to destroy the child. Witness testified that again about the 13th or 14th of November, 1902, she got a bottle of medicine (sent by appellant)

given her by Floyd Bartlett.    She testified that she received
another bottle of medicine, through one Porter Hill, about the
middle of November.   There were no directions as to how to take
the medicine in the bottle received through Bartlett.   She did not
take any of that.   But, as to the bottle of medicine given her by
Porter Hill, the appellant had written her a note which was
tied to the bottle directing how she should take it.   She did take
medicine from the second bottle.   Witness testified that she felt,
after taking the white pills furnished by appellant, "sorter like
taking purgative medicine."   There was proof tending to show
that the contents of the bottles were "abortifacients."    There
was proof tending to show that Porter Hill knew, when he gave
the bottle of medicine to Nela Burris, that it was sent by appel-
lant for the purpose of producing an abortion.   Bartlett did not
know, what the medicine was for.   The prosecutrix gave birth
to twins April 2, 1903, and it was shown that one of the twins
was born dead, and that the other "did not have good use
of itself."   The proof, in short, showed that the prosecutrix took
medicine left with her by the appellant with directions how to
take same, for the purpose of producing a premature delivery
of the fœtus, and that this was before the period of quickening.
This was shown by the testimony of prosecutrix herself.

*Brooks & Hays,* for appellant.

It was error for the court to refuse to give written instruc-
tions.   Const. 1874, art. 7, § 23; 74 S. W. 513; 44 Kan. 483.
The appellant was charged as a principal, and should not have
been convicted as an accessory.   1 Bish. Cr. Law, § 651; 37
Ark. 274; 41 Ark. 173; 55 Ark. 593.   An act forbidden by statute
must be fully done in all its parts, or the offense is not complete.
4 Conn. 421; 2 Dana, 68; 2 Sumner, 240; 14 Ala. 603; 11 Wend.
18; Bish. Stat. Cr. 225, 747; 1 Moody, 114.; Bish. Cr. Law (3d
Ed.), 237.   The prosecuting attorney had no right to argue mat-
ters not in proof in his closing argument.   36 Ohio St. 201; 1
Thomp. Trials, § 966; 33 Conn. 471; 11 Tex. App. 364; 59 Mich.
550.   This was prejudicial error.   6 N. E. 120; 8 Pac. 327; 65
Ark. 389; 47 S. W. 452; 51 S. W. 804; 53 S. W. 427; 55 S. W.
45; 2 Enc. Pl. & Pr. 727; 58 Ark. 473.

*George W. Murphy, Attorney General,* for appellee.

. The objection that the charge of the court was not in writing was not made a ground in the motion for a new trial. 67 Ark. 541; 1 Crawf. Dig. 122. Appellant was properly convicted under the evidence. McClain, Cr. Law, § § 195, 200; 53 Atl. 858; 156 Ind. 41; 23 Ohio St. 146; 18 S. E. 853; 34 N. Y. 223.

Wood, J., (after stating the facts.) The record shows that defendant asked that all instructions be reduced to writing. The court stated that the official stenographer was present, and would take the part of the instructions that were given orally, to which appellant excepted. This exception was not carried into the motion for a new trial, and therefore we must treat it as abandoned. 1 Crawford's Digest, Appeal & Error, IV, b.

Moreover, the instructions which were given orally are set out in the record. They relate to reasonable doubt and the credibility of witnesses, and were correct declarations of law.

It is contended that the testimony of Bartlett and Hill should have been excluded from the jury, for the reason that it tends to show that, if appellant was guilty, his guilt was that of an accessory, whereas the indictment charged him as principal. It was contended therefore that there was a variance between the charge and the proof. Appellant asked instruction numbered 1*, intended to convey the idea that if appellant sent the medicine by another, who knew of the prosecutrix's condition, and knew what the medicine was for, and that appellant was not present when the medicine was delivered or taken, appellant would not be guilty under this indictment. The court properly admitted the testimony of Hill and Bartlett and the testimony showing that these parties delivered medicine to prosecutrix, which was sent to her by appellant. This, in connection .with the testimony of the prosecutrix showing that appellant had given directions about

---

*Instruction No. 1 asked by appellant and refused by the court was as follows:

"1. The jury are instructed that if they find from the testimony that the defendant sent a package or bottle of medicine to the prosecuting witness, Nela Burris, by one Porter Hill, and that the said Porter Hill at the time knew for what purpose such medicine was sent to the prosecuting witness and knew of her condition, and that the defendant was not present when such medicine was so given or delivered by the said Porter Hill, then the defendant would not be guilty under this indictment, and it will be your duty to acquit him of this charge, unless you should further find that defendant did, on another and different occasion, administer or prescribe medicine or drugs to her with the felonious intent to commit an abortion."—(Rep.)

taking the medicine, and what it was for, tended to establish charge of "administering" or "prescribing," as laid in the indictment. The Century Dictionary defines "prescribe:" "3. Specifically, to advise, appoint, or designate as a remedy for disease." "To give medical directions, designate the remedies to be used; as, to *prescribe* for a patient in a fever." Webster defines "prescribe:" "3. (Med.) To write or give medical directions; to indicate remedies; as to prescribe for a patient in a fever." In Indiana the statute says: "Whoever prescribes or administers to any pregnant woman any drug, medicine, or substance whatever," etc. The Supreme Court said: "The word 'administer' in said section does not signify merely the manual administering of the drug, medicine, or substance, but it has a much wider meaning. Among the definitions of said word are the following: 'To furnish, to give, to administer medicine, to direct and cause it to be taken.' (Webster's Dictionary.) 'To supply, furnish, or provide with.' (Standard Dictionary.) As used in said section, the word administer was clearly intended to cover the whole ground named, making it an offense to give, furnish, supply, provide with, or cause to be given, furnished, supplied, or provided with or taken any such drug, medicine, or substance, with the intent named in said section. And said word embraced and was intended to embrace every mode of giving, furnishing, supplying, providing with, or causing to be taken, any such drug, medicine, or substance. This is both the letter and spirit of the section." *McCaughey* v. *State,* 156 Ind. 41. So say we.

The well-known meaning of these words, as given by any of the standard lexicographers, shows that the presence of the defendant in person at the time the medicine is delivered to or taken by the prosecutrix is not necessarily contemplated. The conduct of the appellant in sending medicine used to bring about abortion to the prosecutrix to be taken by her, and his direction to her in person or by letter as to how to take it, come clearly within the meaning of the words "administer" or "prescribe" as used in the statute. There was no error in refusing appellant's request numbered 1 for instruction.

The charge of the court as set forth in instructions 1, 2, 3 and 4, and in instruction numbered 5 given at the request of the defendant,* correctly declares the law of the case applicable to the facts as developed on both sides at the trial.

We find no error in granting or refusing requests for instructions.

The remarks of counsel for the State in referring to certain matters that were not in evidence were exceedingly improper. The court should not have permitted them, and we should not hesitate to reverse on account of these remarks if appellant's guilt upon the undisputed facts were not so clearly established; but in this view the remarks were not prejudicial.

Affirm.

## GOAD *v.* STATE.

### Opinion delivered January 7, 1905.

"BLIND TIGER" CASES—FEE OF DEPUTY PROSECUTING ATTORNEY.—Under the act of March 16, 1895, page, 49, fixing the fee of prosecuting attorneys in "blind tiger" cases, when present and prosecuting either in the circuit court or justice's court, at $25 for each conviction, and the act of April 9, 1895, page 106, section 3, allowing to a deputy prosecuting attorney the same fees for prosecuting such cases in a justice's court as are allowed in the circuit court, a deputy prosecuting attorney who prosecuted a "blind tiger" case in a justice's

---

*NOTE.—The court charged the jury as follows:

"1. If the jury believe from the evidence that Nela Burris, the prosecuting witness, was pregnant with child, and that while in that condition, and within three years next before the indictment was found, the defendant procured medicine or drugs intended by him and calculated to produce an abortion, and gave said medicine or drugs to said Nela Burris, or sent it to her to be taken by her for the purpose of producing an abortion or premature birth before the period of quickening, you should find the defendant guilty.

"2. If the defendant procured medicine for Nela Burris which was not capable of producing an abortion or premature delivery, and gave or sent it to her with no intention of producing an abortion or premature delivery of the fœtus before the period of quickening, but simply to pacify said Nela Burris, until he could arrange to leave the country, then you should acquit.

"3. If the defendant procured and gave or sent medicine or drugs to said Nela Burris with the intention of producing an abortion before the period of quickening, it is no defense that the medicine was not taken, or, if taken, that it failed to produce the abortion or premature delivery.

court is entitled to a fee of $25, although the case was appealed to the circuit court, and the prosecuting attorney was there entitled to a fee of $25 for securing a conviction in the higher court.

Appeal from White Circuit Court.

HANCE N. HUTTON, Judge.

Motion to retax costs denied. The opinion on the original hearing is omitted, as it consists merely of a discussion of the evidence.

STATEMENT BY THE COURT.

At a former day of this term a judgment convicting appellant of violating the "blind tiger act" was affirmed.

The act of March 16, 1895, p. 49, fixed the fees of the prosecuting attorney, when present and prosecuting either in the circuit or justice court in "blind tiger" cases, at $25 for each conviction. The act of April 9, 1895, p. 106, provides: Section 1. "That the prosecuting attorneys in the several judicial

---

"4. If you find from the evidence, that defendant gave or sent to said Nela Burris medicine or drugs with the intent to cause an abortion or premature delivery, but that at the time he gave her the same said Nela Burris had arrived at the period of quickening, you should acquit the defendant, as the statute applies only to cases in which the woman has not come to the period of quickening."

Also at appellant's request the court charged the jury as follows:

"5. Although the jury may believe from the testimony that the defendant did administer and prescribe drugs and medicines to the prosecuting witness, Nela Burris, with the felonious intent at the time, to produce or procure an abortion upon her, then, before you can convict defendant under this charge, you must further find from the testimony, and that, too, beyond a reasonable doubt, that at the time such drugs and medicine were so administered by defendant the prosecuting witness had not yet become quick with child."—(Rep.)