JACKSON v. STATE.

Opinion delivered June 2, 1913.

1. LARCENY—FELONIOUS INTENT—EVIDENCE—SUFFICIENCY.—Where defendant was charged with the crime of larceny for stealing a hog, the evidence *held* sufficient to show a felonious intent. (Page 428.)

2. VERDICT—APPEAL—FINALITY.—Where the testimony is conflicting, the verdict of the jury will be held binding on appeal. (Page 429.)

3. INSTRUCTIONS—REQUESTS COVERED BY INSTRUCTIONS GIVEN.—It is not error to refuse requests for instructions, where the matters embraced in the requests are fully covered by instructions given. (Page 429.)

4. Appeal and error—waiver of error—motion for new trial.—The error of permitting cross examination of defendant is waived when not made a ground in the motion for a new trial. (Page 429.)

Appeal from Conway Circuit Court; *Hugh Basham,* Judge; affirmed.

*John E. Clerget,* for appellant.

1. There is no evidence of an intent to convert. The burden was on the State to prove the intent. Greenleaf on Evidence (15 ed.), §§ 35, 50.

2. The jury should not be permitted to disregard undisputed evidence. 96 Ark. 500.

3. The intent to unlawfully deprive the owner of his property must exist in the mind of the defendant. 24 A. & E. Enc. Law, 45 to 49; Kirby's Dig., § 1830; 78 Ark. 299; 105 Minn. 217. This intent must be proved. 32 Ark. 238.

4. Proof of another crime is not admissible. 72 Ark. 589; 75 *Id.* 427; 84 *Id.* 119; 92 *Id.* 481.

*Wm. L. Moose,* Attorney General, and *John P. Streepey,* Assistant, for appellee.

1. The findings of the jury are conclusive on appeal on matters of fact. 95 Ark. 175, 324.

2. The instructions refused were fully covered by others given by the court. 100 Ark. 199, 201.

Hart, J. The defendant, John Jackson, was convicted of larceny charged to have been committed by stealing a hog belonging to R. B. Brown, and from the judgment of conviction, he has duly prosecuted an appeal to this court.

R. B. Brown testified substantially as follows:

I live near Plumerville in Conway County, Arkansas, and the defendant lives near me. During the month of August, 1912, I turned out seven shoats, and on the same day late in the evening, I met a neighbor who told me my hogs were in his field, and he would try to get them out. The next morning I penned up four of the hogs, but three of them never came up. In a day or two, I was informed that the defendant had taken up one of them, and upon meeting the defendant, asked him about

it. My mark was a hole in the right ear. The defendant said that he had taken up a hog, but he was not marked like mine. He said that the hog he took up was marked with a smooth crop and swallow fork in the left ear, and that there was no mark in the right ear. I accepted his statement, and did not go to examine the hog he had taken up. My hog did not come up, and I again learned that he had a hog in his pen marked in my mark. In the course of two or three weeks, I went to his house, and went around to his pen, which was in his back yard. I saw a hog in the pen and recognized it as my hog. The mark had been changed to a smooth crop and swallow fork in the right ear. The hog had been freshly marked, and the marked place had not yet healed up.

On cross examination, he stated that Jackson told him that he cared nothing about the hog, and that if he would pay him six dollars for his expenses in keeping the hog, he could have it. This Brown declined to do. Brown also stated that Jackson had had him arrested for permitting his hogs to run at large within the limits of the fencing district. The son of the prosecuting witness corroborated the testimony of his father in all essential respects.

The defendant adduced testimony tending to show that the hog he took up was marked with a smooth crop and swallow fork in the right ear, and that it was an old mark. Several witnesses who examined the hog while in the pen testified to this fact. Other testimony tended to show that the defendant went to a justice of the peace after he had taken up the hog within the limits of the fencing district, and asked him how to proceed in advertising the hog. The justice of the peace prepared a form of advertisement, which was given to the defendant. The defendant advertised the hog for sale, and became the purchaser thereof at the sale. The defendant said that he took up the hog in controversy in his field, and that it was at the time marked with a smooth crop and swallow fork in the right ear. That he did not claim the hog as his own, but advertised it as an estray.

The principal contention made by counsel for the

defendant is, that the evidence is not sufficient to sustain the verdict, but we can not agree with his contention in this respect. In the case of *Blackshare* v. *State,* 94 Ark. 548, the court said:

"An effort on the part of one who takes up cattle as estrays to post them would not justify such one in converting such cattle to his own use. The law requires one taking up estrays to do something more than simply to make an effort to post them. (See chapter 149, Kirby's Digest.) An effort, but failure, to comply with the estray laws before converting estrayed animals to one's own use would be evidence to be considered by the jury as tending to prove the absence of a felonious intent in making such conversion. But that is as far as it could go. Where one has taken and converted the animals of another to his own use, if, at the time of the taking, there was the felonious intent to deprive the true owner, whoever he might be, of the permanent use and benefit of his property, the one so taking the animals of another under our statute would be guilty of larceny. One so charged may set up in defense an effort to comply with the estray laws, and the testimony adduced to establish such defense may be considered by the jury in determining the question as to whether the accused took the animals with a felonious intent at the time of the taking to convert them to his own use, and to permanently deprive the owner of his property."

In *Jackson* v. *State,* 101 Ark. 473, the court held: "In a prosecution for larceny of hogs, the good faith of an alleged attempt by the accused to notify the owner, and whether he converted the hogs to his own use by marking them, were questions for the jury." See also, *Cravens* v. *State,* 95 Ark. 321; *Douglass* v. *State,* 91 Ark. 492; *Brewer* v. *State,* 93 Ark. 479.

It will be noted that the prosecuting witness testified positively that the hog belonged to him, and that the mark on it had been changed. He said that when he first was informed that the defendant had up the hog, he questioned him about it, and the defendant told him the hog he had up was not marked like his at all, and that

the hog had no mark at all in the right ear, but was marked in the left ear. That the mark had been recently changed, and the freshly cut ear had not healed.

Other testimony showed that the hog was marked in the right ear. From this the jury was warranted in finding that the defendant at the time he took up the hog, had the felonious intent of converting it to his own use, and this was sufficient to warrant a conviction. It is true that a number of witnesses testified that the mark on the hog was an old mark, and other evidence on the part of the defendant tended to show that he never did claim to own the hog, but took it up within the limits of the fencing district, and advertised it for sale under the provisions of the fencing act. This conflict in the testimony, however, was settled by the verdict of the jury, and, according to the settled rules of this court, we can not invade the province of the jury, and its verdict is binding on us.

Counsel for the defendant also urges that the court erred in refusing certain instructions asked by him on the question of reasonable doubt. This phase of the case was fully covered by other instructions given by the court, and we have repeatedly held that it is not prejudicial error to refuse instructions when the matters embraced in them are fully covered by the instructions given. *Turner* v. *State,* 100 Ark. 199.

The defendant took the stand in his own behalf, and counsel for the defendant urges that the court erred in requiring him to answer certain questions propounded to him on cross examination. In regard to this assignment of error, it is sufficient to say that it was not made one of the grounds of his motion for a new trial, and, under our rules of practice, he will be deemed to have waived it. *Burris* v. *State,* 73 Ark. 453; *Ince* v. *State,* 77 Ark. 418; *King* v. *Black,* 92 Ark. 598.

The judgment will be affirmed.