James R. Hedges *et al.*, Complainants, Appellants, *v.* Alvin Shipp, Trustee, Defendant, Appellee.

(*Nashville*, December Term, 1932.)

Opinion filed July 20, 1933.

Sizer, Chambliss & Kefauver, for complainants, appellants.

W. French Grubb and Lynch, Bachman, Phillips & Lynch, for defendant, appellee.

Mr. Justice Chambliss delivered the opinion of the Court.

The question presented on this appeal is whether or not certain notes belonging to M. M. Hedges on the 10th of January, 1929, were lawfully subject to assessment for taxation *ad valorem* in Hamilton County. The stipulated form of the notes in the record shows that they were each negotiable instruments, being (1) in writing and signed by the makers, (2) an unconditional promise to pay, (3) payable on demand and (4) payable to order, (Acts of 1899, Chap. 94, Code 1932, Sec. 7325.) These notes were loans on call, that is, on demand, made in the City of New York for Hedges and from his funds under an arrangement made with two New York Banks acting for him, under which he received interest on the loans at six per cent per annum.

The Trustee insists that they are assessable *ad valorem,* because falling within Class 5 of Sec. 7, Acts 1929, Chap. 86, Sec. 7, amending the Act of 1907, reading, "Money on hand or on deposit in this State or elsewhere not otherwise assessed in this State." No question of liability for income tax is presented.

For Hedges it is insisted that these demand, or "call," notes are not "money on hand or on deposit," but are evidence of money invested, not taxable *ad valorem,* regardless of whether or not they fall within the exception to "bonds," (defined as "all obligations issued by any person . . . evidenced by an instrument, whereby the obligor is bound to pay interest to the obligee"), the

income on which is subjected to a tax by Chapter 86, Acts 1929, Sec. 4, the exception reading: "provided, that the word 'bond' shall not include ordinary commercial paper, trade acceptances and rent notes, etc., maturing in six months, or less from the date of issuance."

That certain short term,—within six months,—loans are not taxed appears to have been recognized in the opinion of CHIEF JUSTICE GREEN in *Shields* v. *Williams*, 159 Tenn., at p. 367, wherein he concedes "the propriety of a legislative classification for purposes of taxation which burdens the income from long term loans and relieves the income from short term loans." He proceeds: "We think such classification is permissible. Short term loans are employed in merchandising, manufacturing and trade. Such business activities produce wealth and create new taxable values. On the other hand, the proceeds of long term loans are used ordinarily for investment, to acquire property, not to produce property, not to create new taxable values. This consideration seems to justify a distinction in the matter of the taxation of the two classes of securities. A line of separation must be drawn somewhere and a six months maturity appears to be a suitable boundary."

Elsewhere in that opinion, in discussing double taxation, he draws the distinction between taxation of basic property and that of the ultimate right to receive such property. What is said under this head in that opinion apparently justifies the failure of the legislature by the Act of 1929 to provide for the taxing of "short term loans" on the theory that there is no constitutional obligation on the legislature to authorize what is in effect double taxation, although its power to do so is not denied. Also, in a very recent opinion, *Hamilton National Bank*

v. *Chattanooga,* 165 Tenn., 283, 54 S. W., 943, it was again recognized that a justifiable distinction exists and has been made by recent legislation between money loaned out and money on deposit.

It results, therefore, that we have a class of choses in action which is not taxed either *ad valorem,* or as to income, being that class embraced within the exception to "bonds" heretofore defined, to-wit, ordinary commercial paper, etc., maturing within six months. Whether these demand notes now before us are subject to income tax as "bonds," or are within the short term exception, is not now for decision, but if the notes in this case come within the term "money on hand or on deposit" they are, of course, taxable *ad valorem.*

This property was not "money on hand." Was it money "on deposit?" Can it be said to have been "money," in any usual sense of the word, at all? The learned Chancellor, in a brief memorandum, expressed the opinion that it was money on deposit, taking the view that the term "on deposit," as employed in the statute, is not intended to be restricted to deposits in a bank; that the time of maturity of the obligation is determinative, and that whenever a loan is payable, or callable, on demand, whomsoever the payor may be, it is a case of a "deposit" with that payor.

In this view, the holder of every negotiable instrument payable on demand has his "money on deposit," and the money which he has loaned out is assessable to him as a depositor; and, it is at the same time assessable to the payor, as the owner and holder of the identical money.

To this we are unable to agree. It is well recognized that terms used by the legislature are to be taken in their commonly used and accepted sense, and the term

"money on deposit" has a well recognized common meaning. One who in making out a financial statement included in the item "cash" or "money on deposit," money loaned out on notes, whether on demand or otherwise, would be properly and universally condemned for misrepresentation.

In the second place, we find no warrant in the technical definition given in the books for such a construction,—however unjust it may appear that this large fund which was yielding a handsome income should escape taxation.

A deposit, in the technical legal sense, is "a naked bailment of goods to be kept for the depositor without reward and to be returned when he shall require it." Bouvier's L. Dict. All idea of loan with contemplation of use for profit is wanting. The Standard dictionary defines "deposit" as "to place for safe keeping; give in trust; as, to deposit goods; to deposit money in bank." The primary meaning carries the idea of locating a thing for safe keeping and return, rather than for use and profit. The man who was given one talent deposited it in a napkin and when his Lord came he was prepared to return it as received. Use as an income yielding investment is not generally, but only exceptionally, an incident of a deposit.

 In construing laws the intention of the legislature is to be first sought, and in finding this intention the legislation must be considered as a whole. Taking this view of the acts under consideration, it seems clear that the intention was (1) to subject to an income tax "all obligations issued . . . evidenced by an instrument whereby the obligor is bound to pay interest to the obligee" (except certain of those maturing within six months) and (2) to relieve from *ad valorem* tax all such

investment, or income yielding, obligations, providing, however, for the continued taxation *ad valorem* of money itself, in the hands of the owner, or on deposit by him, this exception being justified on the theory (1) that the basic property is thus subjected to taxation but once, and (2) that when on hand or on deposit merely it is, like the pound in the parable, "laid up in a napkin," inactive, nonproductive and non income yielding.

Cases are cited on the brief for the Trustee holding that "all deposits are loans" (*Williams* v. *Rogers,* 77 Ky., 776); and "a deposit in a bank is a loan payable on demand" (*Pratt* v. *Union National Bank,* 79 N. J. L., 117). These and other cases may be conceded to establish that "all deposits are loans;" but it does not follow that all loans are deposits. All gold coin is money, but not all money is gold coin. As already indicated, we are not of opinion that negotiable demand notes can reasonably be brought within the definition of "money on hand, or on deposit," and this decree must be reversed.