ESTEP v. STATE.

(*Nashville,* December Term, 1945.)

Opinion filed January 5, 1946.

Rehearing denied March 2, 1946.

328

HUGH STANTON, of Memphis, and, J. J. LUTIN and ALBERT WILLIAMS, both of Nashville, for plaintiff in error.

NAT TIPTON, Assistant Attorney-General, for the State.

MR. JUSTICE GAILOR delivered the opinion of the Court.

In the Criminal Court of Shelby County, defendant, who is a licensed naturopathic physician, was convicted of administering a toxic drug in violation of Chapter 43 of the Public Acts of 1945. Since that act provides

no specific punishment for the offense, the trial judge applied sections 10755, 10756 of the Code, and in accord with those Code provisions, the defendant was sentenced to a fine of $500 and imprisonment in the county work-. house for 11 months and 29 days. From the conviction he has appealed and assigned a number of errors.

Defendant was arrested in Shelby County on April 13, 1945, and indicted by the grand jury of that County on April 17, 1945. The case was set for trial on May 14, 1945, and in the meanwhile the defendant was released from custody on bond of $1,500. When the case was called on May 14, 1945, the defendant failed to appear. On information supplied by the attorney general's office, the F.B.I. arrested defendant in Monterrey, Mexico, and returned him to Laredo, Texas, whence Memphis officers brought him back to Memphis on the 10th day of June, 1945, and he was put on trial 8 days later on the 18th day of June, 1945. On the morning of the trial his attorneys undertook to interpose (1) a motion for continuance, (2) a demurrer to the indictment, (3) a motion to set aside the forfeiture which had been declared on defendant's, bond for his nonappearance. These motions were all overruled by the trial judge, and the defendant preserved his exceptions. After defendant entered a plea of not guilty, the case went to trial before a jury.

The first witness introduced by the state was one Harry Woodbury, a reporter for the Commercial Appeal, who testified that on the 6th day of April he went to 1970 Union Avenue, Memphis, Tennessee, and entered a building at that address which bore a sign, ''X-ray Clinic Physicians.'' That the interior of the building had the aspect of a doctor's office, and that there was no sign or other indication that it was the place of business of a naturopathic physician. That the office was owned and operated

by the defendant, William Estep, whom the witness identified in the court room. That he found defendant sitting behind a desk and was immediately greeted by him with the words, "You look like you are in quite a bit of pain. What seems to be troubling you, sir?" Woodbury submitted to examination by defendant, who told the witness that "he was eaten up with sinus;" that he had bad stomach ulcers and that his blood pressure was abnormally and dangerously high. Woodbury denied that actually he suffered from any of these complaints. Then after giving him certain electrical treatments, defendant gave Woodbury three prescriptions, one of which was for four ounces of sulfocyanate. Woodbury then left defendant's office after paying him $5 for the treatment and prescriptions.

Another witness for the state testified that the defendant had professionally prescribed sulfocyanate for his wife.

A druggist, who had a place of business near that of the defendant, testified that he had filled a number of prescriptions for sulfocyanate for different people on the order of the defendant. By the druggist and several doctors, it was proved that sulfocyanate was a very dangerous and toxic drug and that an overdose would result fatally in complete cardiac collapse.

The state also introduced evidence to show that the defendant was not licensed to practice general medicine and that he was licensed in naturopathy.

The defendant did not take the stand and introduced no evidence.

After argument and the charge of the court the jury brought in a verdict of guilty, fixing a fine of $500. The defendant made motion for a new trial which was overruled, and the defendant was sentenced to the fine of $500

and imprisonment in the county workhouse for 11 months and 29 days, as stated above.

██ Defendant has perfected an appeal and assigned errors. The first assignment of error, "that there was no evidence to sustain the verdict," is formal merely and requires no further consideration than that of the statement of the state's proof as we have given it above.

██ ██ The second assignment, "that the Court erred in striking Defendant's demurrer," and the seventh assignment, "that the Court erred in refusing the Defendant's application for a continuance," may be conveniently considered together. This Court has frequently held that the matter of a continuance is within the sound discretion of the trial judge, and his action in refusing such continuance will not be reviewed by this Court except when an abuse of discretion is manifest. Here the defendant was indicted on April 17, 1945, and his trial set for May 14, 1945. Instead of preparing his case for trial, he elected to flee the jurisdiction of the court, and when the case was called for trial on May 14 he was apparently in Mexico. Under these facts the judge certainly did not abuse his discretion in denying a continuance. The same facts, no doubt, governed the trial judge in striking the demurrer and applying in strictness, the rule of the Criminal Court of Shelby County, that to be considered, the demurrer must have been filed "not later than the Monday of the week preceding the date set for trial and presented in open Court not later than Thursday preceding the date set for trial." If the defendant suffered any prejudice by denial of the application for the continuance and the striking of the demurrer, such prejudice was self-imposed. Defendant had secured more than a month's delay, from May 14 to June 18, by his own wrong; and it was defendant's flight, and no action of the trial

judge that prevented preparation of the case for trial or timely action on the demurrer to the indictment.

■ However, no reflection for lack of diligence should be cast on defendant's present attorneys on this account, because they were not employed until after his recapture and return to Memphis. We find no abuse of discretion by the trial judge in overruling the application for a continuance (*Ross* v. *State,* 130 Tenn. 387, 390, 170 S. W. 1026; *Fox* v. *State,* 111 Tenn. 154, 76 S. W. 815), and striking the demurrer to the indictment under the local rules of his court (Code, section 10330), and these assignments are overruled.

We respond next to assignments 3, 4, 5 and 6, which assail the action of the trial judge in overruling certain special requests presented by the defendant. To consider these assignments, a brief summary of the history of legislation licensing naturopathic physicians in Tennessee is necessary.

Naturopaths were first licensed in Tennessee under Chapter 49, Public Acts of 1943, under which licensees might practice "Nature cure or health by natural methods," which was in that act defined to be:

". . . the prevention, diagnosis, and treatment of human injuries, ailments, and diseases by means of any one or more of the psychological, physical or mechanical, chemical or material, forces or agencies of nature."

It was found that the licensees construed this language to include the right to give any medical treatment and perform any surgical operation. This was not an entirely unreasonable or impossible construction of the broad scope of the glittering generality of the language used in the act.

The legislature, therefore, at its session of 1945, undertook to correct this situation and limit the treatments and

operations that might be lawfully given and performed by a licensed naturopath. From a comparison of the act of 1943 with the amendatory act of 1945, it clearly appears that the sole legislative intent in passing the amendment of 1945 was to limit the things that might be lawfully done under a license to practice naturopathy. The legislature went farther in the amendment than merely to "define" or "explain", and after reciting what might be lawfully done, *expressly* prohibited the doing of certain things among which was the administration of toxic drugs. This is clear from the language of the amendment:

" 'Nature cure or health by natural methods' (and) is defined as the prevention, diagnosis, and treatment of human injuries, ailments, and diseases by the use of such physical forces, as air, light, water, vibration, heat, electricity, hydrotherapy, psychotherapy, dietetics, or massage, and the administrations of botanical and biological drugs, *but shall not include the administration of narcotics, sulfa drugs and other toxic drugs,* or powerful physical agents, such as X-ray and radium therapy, or surgery . . ." (Emphasis ours.)

If, as defendant insists, the only purpose of the amendment was to define or explain naturopathy, the legislature would reasonably have stopped its definition of naturopathy after the words "biological drugs" in the foregoing quotation. But we think it clear that the legislative intent went further since it added to the complete definition, the express prohibition of administering toxic drugs and using X-ray and radium therapy.

■ ■ We agree with the rules stated by defendant that penal, definitive and explanatory statutes and those which restrain a citizen in the conduct of a trade or profession, are to be strictly construed and not extended by

implication. But no matter how strictly we construe the pertinent part of the act of 1945, quoted above, there is a direct and explicit prohibition laid by the legislature in clear and positive terms, upon those licensed to practice naturopathy, forbidding them from "administering toxic drugs."'

■ As we have stated, this express prohibition was unnecessary to the definition of the word "naturopathy", by the legislature, and the only reasonable inference from the insertion of the prohibition in express terms, was that the legislature thereby undertook to make a disregard of the prohibition a violation of law. Any other construction would make of the prohibitory part of the amendment a vain and useless thing, and give no force to the clear intent of the legislature:

". . .· in construing statutes this court must give effect to the legislative intent, which is fundamental and paramount." *Hamilton Nat. Bank* v. *McCanless,* 176 Tenn. 570, 575, 144 S. W. (2d) 768, 770; *Cummings* v. *Sharp,* 173 Tenn. 637, 642, 122 S. W. (2d) 423 (and cases there cited.)

■ However, there is no penalty expressed in the act of 1945 for such violation, therefore the general penalty statutes, Code, sections 10755, 10756, are applicable. They are:

"10755. Forbidden act without penalty is misdemeanor.—When the performance of any act is prohibited by statute, and no penalty, punishment or forfeiture for the violation of such statute is imposed, the doing of such act is a misdemeanor.

"10756. Punishment for misdemeanors.—Every person who is convicted of a misdemeanor, the punishment for which is not otherwise prescribed by a statute of this state, shall be punished by imprisonment in the county

jail or workhouse not more than one year, or by fine not exceeding one thousand dollars, or by both, in the discretion of the court.''

▇ Defendant insists that there was no necessity for the legislature to create a "new offense" since penal legislation to curb the unlawful practice of medicine was already in the Code. It is no part of the function of this Court to determine the "necessity", expediency or propriety of legislation or to invade the exclusive and independent province of the legislature in determining such necessity or expediency.

''The courts cannot attempt to control legislative policy, nor can they inquire into the expediency, propriety, or even the justice of a statute which violates no provision of the Constitution.'' *Nashville, C. & St. L. Ry.* v. *Baker,* 167 Tenn. 470, 474, 71 S. W. (2d) 678, 680; *Peay* v. *Nolan,* 157 Tenn. 222, 7 S. W. (2d) 815, 60 A. L. R. 408; *State* v. *Lindsay,* 103 Tenn. 625, 53 S. W. 950.

''The judiciary can only arrest the execution of a statute when it conflicts with the Constitution. It cannot run a race of opinions upon points of right, reason, and expediency with the law-making power. . . .'' I Cooley's Constitutional Limitations, 8th Ed., 346.

''It is sufficient that the Legislature has so enacted with or without reason, since the classification itself is not vicious but natural and reasonable in itself.'' *Cavender* v. *Hewitt,* 145 Tenn. 471, 478, 239 S. W. 767, 769, 22 A. L. R. 755.

▇ Our reports contain a number of cases in which an offense was defined by a statute which did not impose a penalty and in these cases sections 10755, 10756 were applied to supply the omission. Two of these cases are particularly in point because they were regulations of individual conduct under statutes which used words of

prohibition equivalent to those in the act before us. They are a complete refutation of defendant's insistence that an effective penal statute must, to create an offense, contain the words "it shall be unlawful" or "it shall be a misdemeanor", as neither of the acts under which the convictions were had, and upheld by this Court, contained those words.

In the case of *State* v. *Keeton*, 68 Tenn. 559, the directors of a school board were convicted of the violation of the following provision of section 19, Chapter 25, of the Acts of 1873, "The Public School Law":

"No director shall be a teacher in the public schools of his district, nor take any contract for building a schoolhouse in his district, nor any contract which his board is competent to make, nor become the owner of a school warrant."

The Public School Law provided no penalty for the violation and this Court upheld the application of what are now sections 10755 and 10756 of the Code.

In the case of *State* v. *Weaver*, 122 Tenn. 198, 122 S. W. 465, the prosecution was for a violation of the law requiring the registration of voters, in certain counties and municipalities, the pertinent section reading in part:

"No voter shall be allowed to vote in any election wherein registration is required by law, unless he shall have first registered." Page 205 of 122 Tenn., page 466 of 122 S. W.

The statute did not prescribe a penalty and it was held that sections 10755 and 10756 were properly applied. It will be observed that in the first case, the language of prohibition was "no director shall," and in the second, "no voter shall,"—clearly this language is identical in meaning with "a licensee shall not."

For the reasons stated, assignments 3, 4, 5 and 6 must overruled. The prosecution sought a conviction, not for a violation of the terms of the licensee's license to practice naturopathy, but for a misdemeanor for the violation of a specific legislative prohibition charged in the indictment and copied from section 4, Chapter 43, Public Acts of 1945. The charge of a penalty other than that contained in Code, section 10756, was properly refused by the trial judge, and his refusal to charge that the defendant was only guilty of the unlawful practice of medicine was also proper. We think the matter contained in the special request, which is the basis of assignment VI, was not only covered by the charge given, but the last clause, "no special penalty is provided for their (toxic drugs) administration by a naturopathic physician," would have served no purpose but to confuse the jury. The trial judge had expressly charged the jury that defendant was accused of committing a misdemeanor and that if found guilty, his punishment was fixed by Code, section 10756, which he read at length to the jury. He had made, on the question of a penalty, a charge very favorable to defendant in this language:

"The Jury has jurisdiction in a misdemeanor case to fine up to one thousand dollars, but in case the Jury should find a verdict of guilty and do not desire the fine to exceed fifty dollars then the Court's authority has the right to assess as much as a fifty dollar fine but no more, and in addition thereto in a misdemeanor case of this type, the Court has in its discretion, the right to assess confinement in the jail or workhouse for a period not to exceed one year. The Jury has nothing to do with the imprisonment."

It is insisted that since defendant merely "prescribed" the toxic drug that he was not proved guilty

of its "administration." There is no merit in this contention under a wealth of authority.

"The word 'administer' was clearly intended to cover the whole ground named, making it an offense to give, furnish, supply, provide with, or cause to be given, furnished, supplied, or provided with, or taken, any such drug, medicine, or substance, with the intent named in said section. And said word embraced and was intended to embrace every mode of giving furnishing, supplying, providing with, or causing to be taken any such drug, medicine, or substance. This is both the letter and spirit of the section." *Burris* v. *State,* 73 Ark. 453, 84 S. W. 723, 724.

"Among the definitions of said word are the following: 'To furnish; to give; to administer medicine; to direct or cause it to be taken.' . . . 'To supply, furnish, or provide with.' . . . As used in said section, the word 'administer' was clearly intended to cover the whole ground named, making it an offense to give, furnish, supply, provide with, or cause to be given, furnished, supplied, or provided with, or taken, any such drug, medicine, or substance," etc. *McCaughey* v. *State,* 156 Ind. 41, 42, 43, 59 N. E. 169, 170.

These citations are in accord with a number of definitions of the word "administer" collected in 2 Words and Phrases, Perm. Ed., p. 429.

Our holding that the demurrer to the indictment was properly stricken probably removes from our consideration the sufficiency of the indictment; and its defects, if any, were cured by plea to the merits and the verdict of the jury. *McKnight* v. *State,* 171 Tenn. 574, 106 S. W. (2d) 556; *State ex rel.* v. *Rice,* 159 Tenn. 473, 19 S. W. (2d) 227; *Pope* v. *State,* 149 Tenn. 176, 258 S. W. 775.

However, we think it proper to reply briefly to defendant's insistence that the indictment was insufficient. The pertinent part of the indictment is brief and may be quoted. It is, that the defendant "did unlawfully violate Section 4 of Chapter 43 of the Public Acts of Tennessee for 1945 in that he the said William Estep, administered a toxic drug to one Harry Woodbury."

The purpose of the indictment is to give the defendant notice of the offense with which he is charged. *Stanfield* v. *State*, 181 Tenn. 428, 181 S. W. (2d) 617, 618, and cases there cited.

The degree of strictness required in an indictment for a felony is not required in the case of a misdemeanor, *Sanderlin* v. *State*, 21 Tenn. 315. We have long departed, in our practice, from many of the technicalities of indictment required in common law pleading, *Givens* v. *State*, 103 Tenn. 648, 55 S. W. 1107; *Jordan* v. *State of Tennessee*, 156 Tenn. 509, 3 S. W. (2d) 159; *State of Tennessee* v. *Cornellison*, 166 Tenn. 106, 59 S. W. (2d) 514. We think the words in the indictment here, "under Chapter 43, Public Acts of 1945," could be treated as surplusage, and that the remainder would still give the defendant notice that he was charged "with unlawfully administering toxic drugs." On the other hand, leaving those words in, it is a fair inference that the pleader intended that the reference to the Act of 1945 should convey to defendant notice that although defendant was a licensed naturopath he was, nevertheless, guilty of a crime, in that he had gone beyond the terms of his license and administered toxic drugs. We think the indictment sufficient to support the conviction.

By his final assignment, defendant insists that the trial judge erred in refusing to set aside the forfeiture and conditional judgment taken on his appearance bond.

When the defendant's case was first called for trial on May 14, 1945, he had fled the jurisdiction and taken refuge in Monterrey, Mexico. It may be reasonably inferred that the state, with the assistance of the F.B.I., was put to much trouble and expense in recapturing defendant and returning him for trial. The only excuse that defendant offers is, that being made nervous at his arrest, he fled to Kansas City, where he was advised by unnamed friends to stay away from Memphis, and he acted on such advice and continued his flight to Mexico. There is some evidence that he was in ill-health but no attempt is made to show that he was incapable of travel or of standing trial on that account.

We find in the defendant's affidavit and its support no valid, or indeed reasonable, excuse for his wilful and deliberate breach of the terms of his bond and the VII assignment is overruled.

For the reasons heretofore given, all assignments are overruled and the judgment is affirmed.

### On Petition to Rehear.

Petition to rehear has been filed by the defendant, whose conviction was affirmed by an opinion rendered by this Court on January 5, 1946. The lawyers who file the petition to rehear did not represent the defendant at the original trial, nor on the original appeal; indeed, they are the third team of legal advisers who have appeared for the defendant since his arrest. The first ground upon which a rehearing is sought is that this Court pretermitted a decision of the defendant's fourth assignment of error in his original appeal. The gist of this assignment was that the trial judge had committed error in refusing a special request presented by the defendant by which the trial judge would have charged the jury that the punish-

ment to be imposed was fixed by Chapter 49 of the Public Acts of 1943. In our original opinion we took pains to point out that the only penalty fixed by that statute was for the unlicensed practice of naturopathy, and that the defendant here was not indicted nor charged with the commission of that offense, since it was admitted that he was a licensed naturopathic physician. The special request presented by defendant and refused by the trial judge, is the following:

"Gentlemen of the Jury, the punishment for the offense for which the defendant is indicted is not a maximum fine of $1000.00 and/or a maximum term of imprisonment of eleven months and twenty-nine days. The penalty provided by the Act under which the Defendant is indicted is a fine of not less than $50.00 and not more than $100.00 and imprisonment in the County Jail or Workhouse of not less than thirty days nor more than six months or both fine and imprisonment in the discretion of the Court."

The defendant was not charged with the unlicensed practice of naturopathy but he was charged with the unlawful administration of a toxic drug in violation of the prohibition contained in Chapter 43 of the Public Acts of 1945.

 Present counsel for the defendant are under a disadvantage since the fact that the penalties prescribed in the act of 1943 were not applicable to the present offense, was expressly admitted by former counsel representing the defendant, both at the bar of this Court and in the printed briefs filed on the original appeal. Formal admission that the penalties prescribed by the Act of 1943 as amended by the Act of 1945, were not applicable to the offense charged, occur in the printed brief originally filed at pages 20, 32, and in the printed reply brief, pages 5 and 6. We think present counsel are

clearly bound by the admission of their predecessors. If such was not the case, there would be no end to litigation. The effect of the admission that the penalties prescribed by the two statutes of 1943 and 1945 were not applicable, is to admit that the special request set out in assignment of error No. 4, was not applicable or relevant to the issues and was, therefore, properly refused by the trial judge. The insistence of counsel who represented the defendant on the original appeal was that if the defendant was guilty of any offense, he was guilty of unlawfully practicing medicine without a license. We think it is too late now for new counsel to change that position and insist that if defendant was guilty of any offense he was guilty of violating the statute of 1943, and so of his license to practice naturopathy.

The second ground laid in the petition to rehear is that the indictment was void and insufficient. We find this consists of re-argument merely, and so does not justify rehearing under Rule 32, 173 Tenn. 886, 887; *Louisville & N. Railroad Co.* v. *United States Fidelity & Guaranty Co.*, 125 Tenn. 658, 691-693, 148 S. W. 671; *Andrews et al.* v. *Crenshaw et al.*, 51 Tenn. 151, 152, 153. We fully considered and upheld the sufficiency of the indictment in our former opinion.

For the reasons stated the petition to rehear will be denied.