KIMSEY *v.* STATE.

(*Knoxville,* September Term, 1950.)

Opinion filed June 16, 1951.

422

HOBART F. ATKINS, of Knoxville, for appellant.

NAT TIPTON, Assistant Attorney General, for the State.

MR. JUSTICE GAILOR delivered the opinion of the Court.

Defendant appeals from indictment and conviction under Code Sec. 10955, the pertinent parts of which are as follows: "Any person who, either individually or in

a representative capacity, shall knowingly make a false statement in writing to any person, respecting his own *financial condition* or *the financial condition* of any firm or corporation with which he is connected . . . *for the purpose of procuring credit* . . . shall be guilty of a misdemeanor.'' (Our emphasis.)

From the judgment under the foregoing section finding him guilty and sentencing him to a fine of $50 and 30 days in jail, the defendant has appealed and assigned errors.

The defendant, having served five years in the United States Navy, had at the time of the trial, a reserve commission in the Naval Air Corps, and was a student at the University of Tennessee. His wife, Dorothy Kimsey, is a teacher in the Knox County schools. The present case rose out of a business which defendant operated under the trade name of the University Village Store, which sold groceries and other supplies to the student trailer camp at the University of Tennessee.

The basis of the prosecution, as alleged in the indictment, is a false statement which the defendant made in writing, to a representative of Dun & Bradstreet in August 1949. A photostat of the statement is a part of the bill of exceptions. The only false detail of that statement is the allegation that the wife of defendant, Dorothy Kimsey, was the owner of the business, and that defendant's position was that of manager.

The defendant testified that he took out privilege licenses in his wife's name and stated that she owned the business because of the hazards of his flying, and because he wanted her to have the business without legal formality, if anything happened to him.

There is no misrepresentation of the assets and liabilities of the business, nor does the statement to Dun & Bradstreet contain any details of the salary or other separate assets of Dorothy Kimsey which were calculated to induce the extension of credit. As to Dorothy Kimsey, the only allegation is ''owner employed as school teacher.'' It is not insisted that there was any misrepresentation of the meager assets and proportionately heavy liabilities which reflected the actual condition of the business when the statement was made in August 1949, and indeed, the record shows that the financial situation of the business was so uncertain that Dun & Bradstreet refused to make a credit classification. There was, therefore, no element of obtaining credit by false pretense. Needless to say, this prosecution was commenced after the business became hopelessly insolvent and defendant was unable to pay debts incurred for merchandise or the deferred purchase price agreed by him to be paid to a former owner.

Under these facts and the relation of the parties disclosed by the record, the determining question is,—was the mere mis-statement of ownership a ''false statement of financial condition'' within the proper construction of Code Sec. 10955. Although that section was passed as part of Chapter 509, Public Acts of 1909, it has apparently never been before this Court for construction. Since it is a penal statute, it is to be strictly construed in favor of the rights of the citizen. *Richmond* v. *State,* 171 Tenn. 1, 100 S. W. (2d) 1; *Estep* v. *State,* 183 Tenn. 325, 192 S. W. (2d) 706. Whatever may have been the intention of the Legislature in the passage of the statute, we must not construe it to have been a cloak for an imprisonment for debt, and so contrary to Section 18 of Article I, of the

Constitution. What was said in an early Pennsylvania case, of a similar statute, is pertinent here:

"Although in ethics, every misrepresentation is morally wrong; yet if so severe a standard of conduct is to be introduced into our criminal code, it is plainly to be seen that breach of contract and crime will be scarcely divided by an appreciable line, and that criminal tribunals will hereafter be employed in punishing infamously acts which have heretofore been understood as only creating civil liabilities. A rule of such extreme urgency might, in some instances, justly chastise a bad man, but it could not fail to be terribly abused by exasperated or reckless creditors, smarting under losses, and stimulated by the fierce spirit of revenge, for wrongs supposed or real." *Commonwealth* v. *Hutchinson,* 2 Parsons Select Equity Cases, 309, 311, 1 Clark, Pa., 242.

"The Act is intended to punish a criminal offense, not to be used as a means of collecting debts, however just, and to suffer it to be perverted to that purpose will necessarily lead to great injustice and oppression." *Prough* v. *Entriken,* 11 Pa. 81, 84.

We think evidence of the essential criminal element of intent to cheat or defraud, is wholly lacking in the present record. The argument that credit of the store was bolstered by the representation that a county school teacher owned the business is scarcely impressive in view of our judicial knowledge of the inadequate pay of teachers. In its ordinary meaning, *Hedges* v. *Shipp,* 166 Tenn. 451, 62 S. W. (2d) 49, the phrase, "false financial statement," means a false statement of assets and liabilities knowingly made and calculated to defraud. There was no such misrepresentation in the present case.

Reversed and dismissed.

All concur.