**STATE of Tennessee, Appellant,**

v.

**Robert BANKS, Appellee.**

Court of Criminal Appeals of Tennessee, at Jackson.

Dec. 22, 1993.

Charles W. Burson, Atty. Gen., and Rebecca L. Gundt, Asst. Atty. Gen., Nashville, John W. Pierotti, Jr., Dist. Atty. Gen. and P.T. Hoover, Asst. Dist. Atty. Gen., Memphis, for appellant.

William C. Gosnell, Memphis, for appellee.

## OPINION

TIPTON, Judge.

The state has appealed as of right from the Shelby County Criminal Court's order granting the defendant, Robert Banks, a restricted driver's license. The defendant's license, which was a commercial driver's license, was revoked for one year as a result of his pleading guilty to two charges of first-offense driving while under the influence of an intoxicant (D.U.I.). At the time of sentencing, an order was entered requiring the issuance of a restricted driver's license in order that the defendant could continue his employment as a bus driver for the Memphis Area Transit Authority. In both cases, the defendant was driving an automobile, not a bus, when he was arrested.

The issue raised is whether or not the D.U.I. statute authorizes a trial court to order the issuance of a restricted commercial driver's license. T.C.A. § 55-10-403(d)(1) provides in pertinent part:

> *if a person's motor vehicle operator's license has been suspended pursuant to subsection (a)* and such suspension is the result of the person's first conviction for violating [the D.U.I. statute], the trial judge is vested with the authority and discretion to allow the continued use of a restricted motor vehicle operator's license issued in accordance with § 55-50-502 [re-

stricted license ordered issued while D.U.I. case is pending], or may, in the event such a license has not been issued, order the issuance of a restricted license allowing the person so convicted to operate a motor vehicle for the limited purposes of *going to and from and working at such person's regular place of employment*....

(Emphasis added). Subsection (a) mandates that the trial court prohibit a person from driving for one year if convicted for the first time of D.U.I.

The state contends that the defendant is statutorily ineligible for a restricted commercial driver's license. In support of its position it cites to T.C.A. § 55-50-302(c)(2) which provides:

> (c) The department shall not issue a license in Class A, B, or C[1] or any of the endorsements[2] specified in subsection (a) other than a for-hire endorsement unless the applicant meets the following qualifications in addition to all other applicable qualifications:
>
> .        .        .        .        .
>
> (2) The applicant must not currently be under a driver license suspension or revocation in this or any other state....

The state also relies upon T.C.A. § 55-50-404(d) which provides in part:

> A commercial driver license may not be issued to a person during a period in which the person is disqualified from operating a commercial motor vehicle, or while the person's driver license is suspended, revoked or cancelled in any state....

While acknowledging the trial court's authority to grant a restricted license in first offense D.U.I. cases pursuant to T.C.A. § 55-10-403(d)(1), the state argues that the statutes it cites create an exception relative to commercial driver's licenses. It argues that higher standards are required to obtain a commercial driver's license due to the heightened risk to public safety from the operation of commercial vehicles and, thus, the legislature could not have intended that persons convicted of D.U.I. be issued re-

---

**1.** T.C.A. § 55-50-102(19).

**2.** T.C.A. § 55-50-102(20).

stricted commercial driver's licenses. Also, it argues that because the statute giving the trial court authority to order issuance of a restricted license is general in nature, it must give way to the more specific statute forbidding issuance of commercial licenses when a license has been revoked as the result of a D.U.I. conviction.

We agree that the trial court lacked authority to order issuance of a restricted commercial driver's license, but not for the reasons argued by the state. We conclude that T.C.A. § 55–10–403(d)(1) does not apply because the license suspended was not an "operator's license" for which a restricted license may be obtained. We reach this conclusion based upon our construction of statutes dealing with driver licenses and D.U.I.s.

Before the extensive reorganization, amending and ultimate replacement of the Uniform Motor Vehicle Operators' and Chauffeurs' Licenses Law by the 1988 Uniform Classified and Commercial Driver License Act (1988 Act), a driver was required to have a valid license as either an operator or a chauffeur. T.C.A. § 55–7–104 (1980 Repl.). Under both the pre–1988 and the 1988 Acts, an operator is defined as, "every person, *other than a chauffeur*, who drives or is in actual physical control of a motor vehicle upon a highway or who is exercising control over or steering a vehicle being towed by a motor vehicle." T.C.A. § 55–7–102(10) (1980 Repl.) and T.C.A. § 55–50–102(37) (1993 Repl.) (emphasis added). A chauffeur is "[e]very person who is employed for the principal purpose of operating a motor vehicle and every person who drives a motor vehicle while in use as a public or common carrier of persons or property." T.C.A. § 55–7–102(2) (1980 Repl.) and T.C.A. § 55–50–102(7) (1993 Repl.). Before the 1988 Act, operators of school buses and common carriers of persons or property were required to be licensed as a "chauffeur" and to hold a "special chauffeur's license". T.C.A. § 55–7–106(a) (1980 Repl.). Neither a chauffeur license nor a special chauffeur's license were the same thing as an operator's license. By definition, these licenses were mutually exclusive. Thus, under the pre–1988 licensing laws, a person holding a chauffeur's license was not eligible for a

restricted chauffeur's license under the D.U.I. statute because he or she would not have had a motor vehicle "operator's license" suspended by the trial court pursuant to a D.U.I. conviction. *See* 1982 Tenn.Pub.Acts 891 and T.C.A. § 55–7–104 (1980 Repl.).

The 1988 Act deleted the requirement for an operator or chauffeur license and substituted instead the following:

> [e]ffective July 1, 1989, every person applying for an original or renewal driver license, shall be required to comply with and be issued a classified driver license ... [n]o person ... shall drive any motor vehicle upon a highway in this state unless such person has a valid driver license under the provisions of this chapter for the type or class of vehicle being driven.

T.C.A. § 55–50–301; *See* Compiler's Notes to T.C.A. § 55–10–403. The act defines "driver license" as, "a license issued by the department to an individual which authorizes the individual to operate a motor vehicle on the highways". T.C.A. § 55–50–102(18). For example, and as pertinent to this case, Class A, B and C licenses are defined as follows:

> (A) Class A. This license shall be issued and valid for the operation of any combination of motor vehicles with a Gross Combination Weight Rating (G.C.W.R.) in excess of twenty-six thousand pounds (26,000 lbs.), provided the vehicle or vehicles being pulled have a Gross Vehicle Weight Rating (G.V.W.R.) in excess of ten thousand pounds (10,000 lbs.). Persons holding a valid Class A license may operate vehicles in Classes B, C and D, but not Class M vehicles, or vehicles which require a special endorsement unless the proper endorsement appears on the license.

> (B) Class B. This license shall be issued and valid for vehicles with a Gross Vehicle Weight Rating (G.V.W.R.) in excess of twenty-six thousand pounds (26,000 lbs.), or any such vehicle towing a vehicle not in excess of ten thousand pounds (10,000 lbs.) Gross Vehicle Weight Rating (G.V.W.R.). Persons holding a valid Class B license may operate vehicles in Classes C and D, but not vehicles in Classes A and M, or vehicles which require a special endorse-

ment unless the proper endorsement appears on the license.

(C) Class C. This license shall be issued and valid for the operation of any single vehicle with a Gross Vehicle Weight Rating (G.V.W.R.) of twenty-six thousand pounds (26,000 lbs.) or less Gross Vehicle Weight Rating (G.V.W.R.). This group applies to vehicles which are placarded for hazardous materials, designed to transport more than fifteen (15) passengers including the driver, or used as school buses. Persons holding a valid Class C license may operate vehicles in Class D but not in Classes A, B or M.

T.C.A. § 55–50–102(19).[3]

Further, the act defines a commercial driver license as "a license issued by the department in accordance with the standards contained in 49 C.F.R. Part 383 to an individual which authorizes the individual to operate a class of commercial motor vehicle...." T.C.A. § 55–50–102(11); *See* 49 C.F.R. § 383.5 (1992). A commercial motor vehicle is defined as:

a motor vehicle or combination of motor vehicles *used in commerce* to transport passengers or property if the motor vehicle:

(A) Has a gross vehicle weight rating or gross combination weight rating of twenty-six thousand one (26,001) or more pounds;

(B) Is designed to transport more than fifteen (15) passengers, including the driver; or

(C) Is of any size and is used in the transportation of materials found to be hazardous for the purposes of the Hazardous Materials Transportation Act and which require the motor vehicle to be placarded....

T.C.A. § 55–50–102(12) (emphasis added).[4] (This definition complies for the most part with the definition contained in 49 C.F.R.

§ 383.5). The federal regulations require that a person operating a commercial vehicle must not have more than one driver's license and that all non-commercial driver's licenses be surrendered to the state. 49 C.F.R. §§ 383.21(a) and 383.71(a)(7) (1992). *See* T.C.A. § 55–50–401.

Part four of the 1988 Act deals exclusively with commercial driver licenses and includes the separate offense of driving a commercial vehicle while under the influence of an intoxicant. *See* T.C.A. § 55–50–408 and T.C.A. § 55–50–405. Although T.C.A. § 55–50–405(a)(6)(A) states that "[a]ny person violating [the driving a commercial vehicle while under the influence of an intoxicant law] shall, upon conviction, be punished pursuant to the requirements of § 55–10–403", the statute creates an exception for the "provision of license suspension, which shall be in accordance with this subsection [§ 55–50–405]." Thus, it excludes from the class of persons eligible for a restricted license anyone who has a commercial license suspended pursuant to T.C.A. § 55–50–405, as the trial court's authority to grant a restricted license is contingent upon suspension of a driver license pursuant to T.C.A. § 55–10–403(a). *See* T.C.A. § 55–10–403(d)(1). This result is mandated by the federal regulations which require that persons convicted once for driving a commercial vehicle while under the influence of alcohol are to be disqualified from driving a commercial vehicle for a period of one year. 49 C.F.R. § 383.51(a), (b)(3) (1992). *See* T.C.A. § 55–50–405(a)(1)(A).

While the federal regulations do not permit the issuance of a restricted commercial driver's license to a person convicted of driving a commercial vehicle while under the influence of alcohol, they do not prohibit the issuance of a restricted commercial driver's license if the prohibited conduct occurred in a non-commercial vehicle. However, neither the 1988 Uniform Classified and Commercial

---

**3.** There are other classes for vehicles under twenty-six thousand one pounds, motorcycles, minors and instructional permits. The statute also lists endorsements which generally relate to authorized uses of the vehicle being driven.

**4.** Various types of motor vehicles are excluded from the definition of commercial motor vehicles such as vehicles used by farmers and nursery

workers to transport agricultural products, machinery or supplies under certain conditions, emergency vehicles, military vehicles, recreational vehicles and vehicles leased to transport personal possessions or family members for non-business purposes. *See* T.C.A. § 55–50–102(12)(D)(i)–(v).

Driver License Act nor the D.U.I. statute specifically address this issue.

The legislature has not changed the pertinent language in T.C.A. § 55–10–403 to reflect the 1988 changes in the nomenclature of licenses; thus, the contingency upon which the trial court's authority to order issuance of a restricted driver's license remains the suspension of an "operator's license". However, the 1988 Act, as its title reflects, contemplates only classified and commercial licenses. As previously noted, the distinction between an operator's license and a chauffeur's license has been abolished, and all driver licenses are now issued in one of the classes specified in § 55–50–102. *See* Compiler's Notes to T.C.A. § 55–10–403.

■■■ Because the 1988 Act and the D.U.I. statute both deal with the issuance of restricted driver licenses, the term "operator's license" must be construed consistently so as to make the statutory scheme operate in a uniform manner. *See State v. Hughes,* 512 S.W.2d 552, 553 (Tenn.1974). Indeed, both statutes incorporate the other by reference, further necessitating a consistent construction of the relevant terms. *See, e.g.,* T.C.A. §§ 55–10–403 and 55–50–502. It is a well settled rule of statutory construction that courts should construe statutes to reconcile different provisions in order to give them a consistent meaning. *See Scales v. State,* 181 Tenn. 440, 181 S.W.2d 621 (1944).

■■■ The term "operator's license" must be considered in the context of the entire statutory scheme without any forced or subtle construction extending its import. *See McClain v. Henry I. Siegel Co.,* 834 S.W.2d 295, 296 (Tenn.1992). We therefore conclude that the term "operator's license" contained in T.C.A. § 55–10–403(d) must be construed to mean "classified license" in light of the changes brought about by the 1988 Uniform Classified and Commercial Driver License Act. Thus, if a person's classified license is suspended pursuant to T.C.A. § 55–10–403(a), then the trial court has the authority to order issuance of a restricted classified license for the purpose of employment.

■■■ In this respect, the state argues that a trial court does not have authority to order issuance of a restricted Class A, B or C license because these are commercial licenses. In effect, the state blurs the distinction between commercial licenses and classified licenses. However, although the definition of a commercial motor vehicle includes vehicles that would fall within these classes, a commercial motor vehicle has the additional requirement of being used in commerce. No such requirement is contained in the vehicle descriptions within the various classes of driver's licenses. As previously noted, fairly large vehicles may be driven without a commercial driver license when they are being driven for non-commercial purposes. *See supra* note 4. In such a circumstance, a classified license pertaining to the vehicle would be required but a commercial license would not. Thus, in the circumstance of a vehicle being driven which would require a Class A, B or C license, but not a commercial license, the trial court would have the authority to issue a restricted classified license pursuant to T.C.A. § 55–10–403.

■■■ We do not believe the legislature intended that trial courts have the authority to order issuance of restricted commercial driver licenses. While we are mindful that penal statutes are to be strictly construed against the state and not extended by implication, especially where restriction of a person's livelihood is involved, *see State v. Bobo,* 727 S.W.2d 945, 952 (Tenn.1987); *Estep v. State,* 183 Tenn. 325, 192 S.W.2d 706, 710 (1946), we are constrained to hold that the trial court was not authorized to order issuance of a restricted commercial driver license because the defendant did not have a "classified license" suspended within the meaning of the licensing statute. T.C.A. § 55–10–403 does not refer to a commercial license (or a chauffeur's license under the prior nomenclature) in the context of the court's authority to issue a restricted license. A rule of statutory construction provides that mention of one subject in a statute indicates an intent to exclude other subjects that are not mentioned. *See State v. Harkins,* 811 S.W.2d 79, 82 (Tenn.1991). We believe the legislature would have stated that a restricted license could be issued in the event that a commercial license (or chauffeur's license)

had been suspended, if that had been intended. Therefore, while the legislature has made plain its intention that first offenders be given the opportunity to obtain a restricted license for the purpose of continuing with employment, this is not the case when the driving privileges suspended involved a commercial license.

■ As for the state's argument that T.C.A. § 55–50–302 and T.C.A. § 55–50–404 create an exception to the grant of authority vested in trial courts to issue restricted licenses, we cannot agree. These sections are part of the 1988 Act and must be read in context, not in isolation. Aside from T.C.A. § 55–50–302(c)(2) prohibiting issuance by the department of a Class A, B or C license, and T.C.A. § 55–50–404 forbidding issuance of a commercial driver's license if the applicant is currently under a driver license suspension or revocation, we note that the Act also prohibits issuance of *any* license under these circumstances. T.C.A. § 55–50–303(a)(2) provides that the department "shall not issue *any* license hereunder ... [t]o any person whose license has been suspended, cancelled or revoked, during suspension, cancellation or revocation and not until such person has complied with all requirements for reinstatement". (Emphasis added). Obviously, if we were to construe this section as having precedence over T.C.A. § 55–10–403, no one would ever be granted a restricted license. Thus, we believe the sections upon which the state relies address the independent authority of the Department of Safety to issue such licenses, but do not prohibit it from complying with a trial court's order for the issuance of restricted licenses.

In any event, our reading of the wording of T.C.A. § 55–10–403(d)(1), in light of the changes regarding the types of licenses in the 1988 Act, necessitates a conclusion that the trial court lacked authority to order issuance of a restricted commercial driver license. The order of the trial court ordering issuance of a restricted commercial driver license is reversed.

DWYER and JONES, JJ., concur.